# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

MACK TRUCKS, INC.,            )
                         )
        Plaintiff,       )
                         )
     v.                )
                         )
INTERNATIONAL UNION, UNITED )
AUTOMOBILE, AEROSPACE   )
& AGRICULTURAL IMPLEMENT )
WORKERS OF AMERICA-UAW, et al., )
                         )
        Defendants.    )
                         )
MARTIN RACHILLA, JOSEPH E.  )
CRAIG, JR., JOHN R. WAHLER,   )
RONALD L. ROYER, DOROTHY  )
GANTZ, CHARLES CULLEY DAVID )
MOORE, on behalf of themselves and a )
similarly situated class, and    )
INTERNATIONAL UNION, UNITED )
AUTOMOBILE, AEROSPACE &   )
AGRICULTURAL IMPLEMENT   )
WORKERS OF AMERICA – UAW,  )
                         )
        Plaintiffs,     )
vs.                 )
                         )
MACK  TRUCKS,  INC.,  and  MACK )
TRUCKS, INC. RETIREE WELFARE )
BENEFIT PLAN,        )
                         )
        Defendants.    )

Civil Action No. 2:07-cv-3737-RBS

R. BARCLAY SURRICK

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

The parties to this litigation respectfully submit this memorandum of law in support of their joint motion for final approval of class action settlement.

## I.      INTRODUCTION

By this Motion, the parties to this class action litigation respectfully request final approval of the Court for the Settlement Agreement, previously filed with the Court as Attachment A to the parties' Joint Motion for Preliminary Approval filed March 18, 2011. (ECF No. 56).  For the purposes of this Motion for Final Approval, and for the convenience of the Court, the parties incorporate by reference, in its entirety, the factual and procedural background of this litigation as previously set forth in their earlier Motion for Preliminary Approval. (ECF No. 56).

## II.     THE SETTLEMENT MEETS THE STANDARDS REQUIRED FOR FINAL JUDICIAL APPROVAL

The Parties jointly present this class action Settlement Agreement to the Court for its review and final judicial approval under Fed. R. Civ. Pro. 23, which provides in pertinent part:

> **(e)   Settlement, Voluntary Dismissal, or Compromise.**  The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1)      The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)      If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)      The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> ***
> (5)      Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Under Fed. R. Civ. Pro. 23(e), a district court's primary role is to determine whether the settlement is "fundamentally fair, reasonable and adequate." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). The purpose of Fed. R. Civ. P. 23(e) is to protect the unnamed members of the class. *In re. Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

District courts are granted broad discretion "in determining whether to approve a proposed class action settlement...This discretion is conferred in recognition that '[t]he evaluation of [a] proposed settlement in this kind of litigation...required an amalgam of delicate balancing, gross approximations and rough justice.'" *Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010); *see also Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In addition, as the Third Circuit recently noted when it took the opportunity to "reaffirm the 'overriding public interest in settling class action litigation,'" settlements of disputed claims, especially those in complex class action litigation, are heavily favored in the law. *In re Pet Food Prod. Liab. Litig.*, 627 F.3d 333, 351 (3d Cir. 2010). Furthermore, the courts in this jurisdiction have long noted voluntary settlements are to be favored where, as here, agreement resolves complex disputes that would otherwise linger in court and demand valuable judicial resources and expense. *See Ehrheart v. Verizon Wireless,* 609 F.3d 590, 595 (3d Cir. 2010) (noting the "especially strong" presumption in favor of voluntary settlements in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation," quoting, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1990)).

The settlement in this case is fair, reasonable and adequate and should be approved.

## A.     The Class Was Given Proper Notice of the Settlement

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). *See also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed. 2002). Furthermore, due process requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Phillips Co. v. Shutts*, 472 U.S. 797, 812 (1985). There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) *cert. denied,* 544 U.S. 1044 (2005).

The threshold requirement concerning class notice is whether the means employed to distribute the notice were reasonably calculated to apprise the class of the pendency of the action, of the purpose of the settlement, and of the class member's right to object to the settlement. The actual mechanics of appropriate notice are left to the discretion of the district court, subject to the broad "reasonableness" standard of due process. In this district, notice of a settlement will be adjudged adequate where notice announces the date of settlement approval hearing, outlines the allegations prompting the litigation, and summarizes the settlement terms. *See Serrano*, 711 F. Supp. 402 (E.D. Pa. 2010); *Boone v. City of Phila.*, 668 F. Supp. 693 (E.D. Pa. 2009); *In re Am. Investor's Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009). Further it is clearly established that "notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual

notice, so long as class counsel acted reasonably in choosing the means likely to inform potential

class members." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y.

2008) (*citing Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988), *cert. denied*, 488

U.S. 1005 (1989)).

In granting preliminary approval of the proposed class action settlement, this Court,

citing Fed R. Civ. Pro. 26(e)(1), acknowledged that it "must direct notice in a reasonable manner

to all class members who would be bound by the proposal." (Memorandum and Order Granting

Parties' Joint Motion for Preliminary Approval of Class Action Settlement and Proposed Notice

to Class, dated May 12, 2011, ECF No. 63). In considering the content of the parties' notice and

the distribution plan, the Court concluded that:

> The notice provides all pertinent information in clear and understandable language. The notice describes the nature of the controversy and the terms of the proposed settlement, and informs Class Members of their right to object, the objection procedures, and the date and location of the fairness hearing.
>
> Mack estimates that there are 9,368 individuals in the Class. The parties plan to distribute the notice by first-class mail to the home of each individual Class Member. Mack has a current list of the home addresses of every Class Members.

*Id.*, ECF No. 63.

In accordance with the Court-approved notice plan, Class Members were mailed

individual notice by United States Mail on or before June 1, 2011, for delivery "to the home

addresses of each eligible Retiree and Surviving Spouse." *See,* ¶ 3, Order, dated May 12, 2011,

ECF No. 64; *and,* Declaration of Joseph Huxta submitted herewith as Exh. A.

By Order of the Court dated September 4, 2009, Judge Golden certified the class in the litigation

as follows:

> All persons who, as of June 1, 2009 were: (a) Mack/UAW retirees
> who were covered by a Mack/UAW master agreement and who
> had retired from Mack with eligibility to participate during
> retirement in the Mack-UAW insurance program, or (b) the
> spouses, surviving spouses and dependents of Mack/UAW
> employees who were covered by a Mack/UAW master agreement
> and who, as of June 1, 2009 were eligible for post-retirement or
> surviving spouse health care coverage under the Mack-UAW
> insurance program as a consequence of a Mack-UAW employee's
> retirement from Mack or death prior to retirement, is hereby
> certified;...

(Case No. 09-00622, Order dated Sept. 4, 2011, ECF No. 18)

The size and nature of the Class and the location of the Class Members has not changed

materially since the Court's Preliminary Approval of the parties' Notice Distribution Plan on

May 12, 2011. Nor has anything of relevance changed as to the nature of the controversy, the

posture or status of the litigation, or the terms and conditions of the Settlement Agreement since

the Court granted its preliminary approval of the parties notice and distribution plan. Objections

to the Settlement Agreement were not due until August 10, 2011, giving the Class Members a

full three months' notice prior to the deadline for submitting objections to the settlement. The

handful of objections filed, out of over nine thousand Class Members, will be discussed below.

The content of the notice describing the scope and substance of the class action

Settlement Agreement and Class Members' rights to object, and the means of distribution of the

notice, readily satisfy all requirements of due process, as well as Fed. R. Civ. Pro. 23(c)(2)(B).

*See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *Torrisi v.*

*Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom Reilly v.*

*Tucson Elec. Power Co.*, 512 U.S. 1220 (1994); *Boone,* 668 F. Supp. 2d at 709.[1]

**B.     The Settlement Satisfies the *Girsh* Factors and Merits Final Approval**

Approval of a class settlement should be given where the court finds settlement to be fair,

reasonable, adequate, and in the best interests of the class members. *See, Fry v. Hayt, Hayt &*

*Landau*, 198 F.R.D. 461, 470 (E.D. Pa. 2000). In *Girsh v. Jepson*, 521 F. 2d 153 (3d Cir. 1975),

the Third Circuit developed the following nine factor test to aid district courts in determining

whether a class action settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the Class to the Settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the Class action through trial; (7) the
> ability of the Defendants to withstand a greater judgment; (8) the
> range of reasonableness of the Settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the
> Settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Girsh*, 521 F.2d at 157, *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258.

(Reaffirming and using *Girsh*'s nine factor test).  As explained below, the Settlement satisfies the

*Girsh* factors, and should receive Final Approval from the Court.

**1.     The Complexity, Expenses and Likely Duration of the Litigation**

This *Girsh* factor is intended to capture "the probable cost, in both time and money, of

continued litigation." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003).

Some perspective on this factor can be gained from a brief recapitulation of the lengthy and

complex history of this case.

This litigation began on September 7, 2007, when Mack filed a declaratory judgment

action in this Court seeking a declaration of its right to change or discontinue retiree medical

---

[1]  Notice to State and Federal Attorneys General under the Class Action Fairness Act (CAFA)
was provided in accordance with that law.  One inquiry and no objections were received.

coverage for current UAW retirees. *Mack Trucks, Inc. v. Int'l Union, UAW et al.* (E.D. Pa. No. 2:07-cv-03737 RBS).   The named defendants were the UAW and a single putative class representative, Mack retiree Carl Breininger.   The case was assigned to the late Hon. Thomas M. Golden.   Mack and the UAW jointly requested that the matter be placed in civil suspense pending settlement negotiations, to which Judge Golden agreed on March 20, 2008 (Case No. 07-3737, ECF No. 25).   Mack and the UAW thereupon entered into extensive discussions, and they agreed to explore the possibility of creating an independent VEBA to secure health care coverage for current and certain future Mack-UAW retirees.   The negotiations were difficult, and by the fall of 2008, they had stalled.

On November 12, 2008, the UAW and seven individual Mack retirees commenced a class action against Mack and its retiree health care benefit plan in the Eastern District of Michigan asserting that the Mack retiree health care benefits were vested and seeking an order preventing Mack from unilaterally altering the benefits. *Rachilla, et al. v. Mack Trucks, Inc., et al.* (E.D. Mi. Case No. 08-cv-14771, Hon. Thomas L. Ludington).[2]  On February 10, 2009, Judge Thomas Ludington granted Mack's motion to transfer venue to this Court where the matter was assigned case number 5:09-c.v.-00622.

On August 25, 2009, the parties filed a joint motion to certify the class of Mack retirees and for the appointment of Class Counsel, which Judge Golden granted on or about September 4, 2009.  On September 9, 2009, Judge Golden consolidated both matters under the *Mack Trucks, Inc. v. UAW et al.*, 2:07-cv-3737 caption.  On August, 12, 2010, the consolidated case was re-assigned to this Court.

The issues raised by Mack, the UAW, and the Class of eligible retirees in the various

---

[2] Unfortunately, one of the *Rachilla* plaintiffs, David Moore, has passed away since the lawsuit was filed.

aspects of this consolidated litigation involve complex and largely unsettled issues concerning the interplay of the Labor and Management Relations Act (LRMA) and the Employee Retirement Income Security Act (ERISA). The retiree health care benefits that are at the core of the dispute are increasingly costly to Mack and valuable to the aging retiree Class Members. The stakes are high and the issues are of critical importance to all parties. As a result, all parties agree that the litigation, absent this carefully and thoughtfully negotiated voluntary settlement, will continue, possibly for years, until final legal resolution despite the complexity, uncertainty and the concomitantly high costs that the parties anticipate will be associated with the litigation.

If the parties were to continue to trial, the trial would be complex and expensive, with the outcome uncertain for all parties. Regardless of which party would be successful on the merits at trial, the issues are sufficiently unsettled and the stakes sufficiently high that there is no certainty that the result at trial would not be disturbed by appeal to the Third Circuit and/or the Supreme Court.

In light of the lengthy and complex history of this case and the prospect of intensive litigation with uncertain results in the future, Class Counsel weighed the risks of pursuing further litigation against the benefits to be obtained through the Settlement Agreement and concluded that it was in the Class Members' best interests to resolve the dispute at this juncture. Likewise, Mack Trucks weighed the risks and expense of continuing the litigation and determined that the settlement was in its best interests as well. The complexity, expenses and likely duration of litigation weigh heavily in favor of approval.

### 2.      The Reaction of the Class

Under the second *Girsh* factor, the reaction of the Class Members to the notice of proposed class action settlement is relevant to assessing if the settlement agreement should receive final approval from the Court. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148

F.3d at 318. This factor has been recognized as relevant to a court's "attempts to gauge whether members of the class support the settlement..." *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d at 629.

A total of nine Class Members objected to the settlement (including those which apparently were not filed with the Clerk), out of a Class numbered at 9,368.[3] An objection rate of less than one-tenth of a percent strongly reflects Class Member support for the settlement agreement, and should weigh heavily in favor of final approval of the Settlement Agreement by the Court. *See In re Linerboard Antitrust Litig.*, 321 F.Supp. 2d at 629 ("No class member objected to either settlement. This fact strongly militates a finding that the settlement is fair and reasonable."); *Boone*, 668 F. Supp. 2d at 712 ("The fact that so few potential class members objected to or opted out of the settlement supports a finding of general acceptance of the settlement in the class.").

This conclusion is particularly appropriate here, where the few objections received raised no substantive challenge to the fairness or merit of the settlement itself, but merely reiterated and reasserted the Class Members' heart-felt understandings and beliefs underlying this litigation, i.e., that they were entitled to vested lifetime retiree health care benefits.

### 3.    The Stage of the Proceeding and the Amount of Discovery

This Circuit recognizes that a settlement made after exchange of a reasonable amount of discovery generally reflects the true value of the claims. *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993). Mack and the UAW have engaged in collective bargaining for decades. Both parties know the history. Their negotiations to resolve this dispute began almost

---

[3]   Four objections are reflected in the case docket: Michael Tauber (ECF No. 67), Meryl K. Benner (ECF No. 68), Stanley Kruslicky (ECF No. 70), and Fran Beller (ECF No. 73). In addition, Class Counsel received the attached objections from: Donald S. Renner, Douglas K. Sherry and Carol H. Demkee, Louis DeNardo and Richard A.DeNardo, Jr., which do not appear on the case docket (Exh. B attached).

four years ago. In the course of the efforts to settle this matter, Mack disclosed extensive financial and operational information to the UAW, which retained a financial expert, Leon Potok, to review it. Following resumption of negotiations in the fall of 2008, the UAW and Class Counsel obtained additional and updated information from Mack. Class Counsel's financial expert, Dr. Nitin Paranjpe of Thompson Econometrics and Employment Research, reviewed the original and updated information on Mack's financial condition and current and projected viability, including financial data, commercial arrangements and market position based on data provided by Mack. Class Counsel and the UAW also relied on the expertise of Suzanne Taranto, a consulting actuary with Milliman, who had been retained by the UAW in 2008 to assist in evaluating Mack's post-retirement healthcare benefit obligation. Ms. Taranto reviewed the actuarial calculations of Mack's actuary for the purpose of evaluating the financial impact of various changes in Mack's benefit structure and to project the long-term cash flow impact of such changes. As negotiations regarding the VEBA progressed, Taranto was called upon to develop long-term funding models for providing post-retirement healthcare benefits. Class Counsel also thoroughly investigated the applicable law, including a review of recent case law.

Under the Court's supervision, the parties negotiated intensively for many months. These negotiations were informed by the expertise and advice of their professional economic and actuarial consultants. The parties crafted this settlement with a high degree of specific knowledge and understanding of the critical factual, economic and legal factors at issue. This weighs heavily in favor of approving the Settlement Agreement as fair, reasonable and adequate. *Boone*, 668 F. Supp. 2d at 712. ("The discovery and other investigations that the parties have undertaken render them sufficiently informed to make a determination about the fairness of a settlement.").

### 4.    The Risks of Establishing Liability and Damages

The risks of establishing liability and damages are the fourth and fifth *Girsh* factors for the Court to consider when evaluating a class action settlement. However, "although the Court must weigh the relative strengths and weaknesses of each side to determine the risks of establishing liability, it should 'not decide the merits of the case or resolve unsettled legal questions.'" *Austin v. Pa. Dep't. of Corr.*, 876 F. Supp. 1437, 1471 (E.D. Pa. 1995) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 78, 88 n.14 (1981)).

As to liability, this litigation involves significant issues of fact and law concerning the right of Class Members to lifetime health care benefits. Both the facts and the law are widely susceptible to different interpretations. In particular, the law in this area is complex and far from settled in application to the facts and issues, even if those facts were agreed upon by the parties.

Given this uncertainty, the risks of litigation for the Class Members are high. Much is at stake for the Class Members, given the importance of health care benefits for retirees, spouses and dependents. If this matter proceeds to judgment, and Mack ultimately prevails, Mack could be free to drastically cut or even terminate retirees' health care benefits. The Class Members already have experienced some reduction in their benefits under the Restructured Plan, and there likely will be further benefit reductions under the VEBA. However, the retirees stand a far better chance of retaining meaningful lifetime benefits under a reasonably well-funded VEBA operated by fiduciaries dedicated exclusively to the retirees' interests, than they would with an adverse litigation outcome.

The risks are equally high for Mack Trucks. The cost of retiree benefits is a burden to Mack that has been growing disproportionately in relation to its business, and that trend is expected to continue. If a judgment in favor of the Class requires Mack to continue providing ever more costly medical benefits to retirees, Mack will face serious financial strain. There is

12

always the possibility that a victory for the Class could turn out to be a hollow one if the cost of complying with a judgment endangers the continued viability of the employer. *See, e.g., UAW v. GM & UAW v. Ford Motor Co.*, 497 F.3d 615, 632 (6th Cir. 2007) (shifting costs to automobile companies would "run the risk of being a Pyrrhic one because the cost of insisting on irreversible healthcare benefits might well be – and indeed almost certainly would be – the continuing downward spiral of the companies' financial position.").

In light of the high stakes for the parties, and the uncertainty of the outcome in this case, the settlement proposed here is eminently fair and well within the range of reasonableness warranting final approval.

### 5. The Risks of Maintaining a Class Action Through Trial Weigh in Favor of Final Approval of the Settlement Agreement

Although there are no factors indicating a likelihood that the class certified in this litigation can not be maintained through trial, there is always some risk of decertification in any class action. This Court has found that this factor in and of itself weighs in favor of settlement. "Consistent with this reality, we are satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of approving settlements." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d at 344.

### 6. Defendant's Ability to Withstand Greater Judgment

Under this seventh *Girsh* factor, the Court is to consider whether Mack Trucks could withstand an "amount *significantly* greater than the Settlement." *In re Cedant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001) (emphasis added). Due to the realities of the current economic environment in which Mack Trucks competes, this factor weighs heavily in favor of final approval of the Settlement Agreement. Even if it is *theoretically* possible for Mack Trucks to withstand a significantly larger judgment, this should be balanced against the "risk that the

plaintiffs would not be able to achieve any greater recovery at trial." *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d at 632.   Also, the Court should consider and balance this theoretical possibility against the possibility recognized by the Sixth Circuit in *UAW v. GM, & UAW v. Ford Motor Co.*, where that court noted in similar litigation that a verdict for retirees "run[s] the risk of being a Pyrrhic one because the cost of insisting on irreversible healthcare benefits might well be – and indeed almost certainly would be – the continuing downward spiral of the companies' financial position." *UAW v. GM, & UAW v. Ford Motor Co.*, 467 F.3d 615, 622 (6th Cir. 2001). This factor also favors final approval of the Settlement Agreement.

### 7.   The Reasonableness of the Settlement in Light of the Best Possible Recovery

The final two *Girsh* factors require the Court to determine whether the class has settled for the appropriate value in light of the potential damages.   *See In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d at 344.   For purposes of assessing the value of the settlement to the Class, the major contours of the agreement are briefly recapped below.

### The VEBA Trust Fund

The settlement provides for the establishment of a VEBA trust fund following final approval by the Court.   The VEBA will be funded by Mack and A.B. Volvo as described below. The VEBA will use its assets exclusively for the purpose of providing retiree medical benefits to Class Members and other plan participants, and for paying the reasonable expenses of administering the plan.   The Class of retirees and dependents will receive only those retiree medical benefits that the VEBA's assets are sufficient to provide.

### *The Current Restructured Plan*

During settlement negotiations, Mack and the UAW conditionally agreed to a modified plan of medical benefits for Class Members and certain other Mack employees who retire in the future, and their spouses, surviving spouses and dependents. The negotiated plan, the "Mack Trucks, Inc. Restructured Plan" ("Restructured Plan"), went into effect on October 1, 2009. Administration and funding of the Restructured Plan will continue under the Settlement, subject to change in the future, as discussed below, based on available VEBA assets and funding projections. Class Members currently are receiving benefits under the Restructured Plan. The Restructured Plan provides medical, hospital, surgical benefits under a Highmark PPO plan, and prescription drug and behavioral health benefits, for participants who are not eligible for Medicare. Medicare-eligible participants are covered for medical, hospital, surgical, prescription drug and behavioral health benefits under an Aetna Medicare Advantage (MA) plan. The benefits under the Restructured Plan are reduced from the retiree medical benefits in effect prior to the Restructured Plan's October 1, 2009 effective date. The Restructured Plan requires cost sharing by participants, including annual deductibles and co-payments. The Restructured Plan also requires monthly contributions by participants in order to maintain coverage. The amount of the monthly contribution depends on the retiree's date of retirement, or the date of an employee's death for a surviving spouse of a retirement-eligible employee, as well as whether single or family coverage is selected and whether the participant is Medicare-eligible. For example, the current monthly contribution for family coverage (two or more persons) for a retiree who retired between December 2, 2004, and July 1, 2009, is $320 for a non-Medicare eligible family and $160 for a Medicare-eligible family.

**The VEBA Funding**

The Settlement obligates Mack and A.B. Volvo to fund the VEBA by contributing a total of $525 million into the VEBA in five annual installments, with adjustments for interest and verified benefit expenses that Mack has paid since the Restructured Plan went into effect. Once Mack and A.B. Volvo have satisfied the VEBA funding obligation, they will have no further responsibility for making payments into the VEBA.

**VEBA Funding Projections and the Necessity of Future Cost-Shifting to Retirees**

As explained in our brief in support of the motion for preliminary approval and in the Notice to the Class, the Settlement Agreement provides the certainty of up-front cash funding in an independent trust, but also shifts to retirees the risk associated with actuarial variables such as investment return and medical inflation. It is not possible to predict with certainty, particularly given the current unsettled state of the economy and investment markets, the annual investment return the VEBA will achieve over the next several decades. If the VEBA were to invest in a traditional mix of 60 percent equities and 40 percent bonds, actuarial projections indicate that the VEBA would earn an annual average return of approximately 7.5 percent which would be actuarially projected as sufficient to fund 85 percent of the current plan of benefits under the Restructured Plan (see Declaration of Suzanne Taranto filed in support of preliminary approval, paragraph 11). However, if the VEBA assets are invested more conservatively, the projected average annual return could be substantially less, which would mean that the projected funded percentage of the current plan of benefits would be substantially lower. (The lower funded percentage under a conservative investment approach, however, would presumably be ameliorated by lower risk of adverse investment experience.) Other VEBAs covering UAW retirees currently are projecting average annual earnings in the range of 5.5 percent to 7 percent

based on existing investment portfolios. (Supplemental Declaration of Suzanne Taranto, Exh. C, ¶ 3). Milliman calculates that, as of January 1, 2012, if the UAW-Mack VEBA assets are projected to earn an average of 6.5 percent per year, the funded percentage of the current plan of benefits would be 76 percent and if earnings are projected at 5.5 percent the funded percentage would be 66 percent. (*Id.* ¶ 3). It is not possible, however, to predict with any certainty how the UAW-Mack VEBA assets will be invested once the VEBA is established, and what average annual return will be received.

What can be predicted with certainty is that the VEBA will have to reduce benefits or increase retiree contributions in the future.

Despite the uncertainties surrounding the benefit funding level, and the likelihood of future benefit reductions, the Class will benefit significantly from a secure and independent source of funding for future retiree health care benefits that is not tied to the economic fortunes of Mack Trucks. The obligation on the part of Mack Trucks, backed up by its global corporate parent, A.B. Volvo, to provide cash funding sufficient to maintain a meaningful, though reduced, level of benefits for the remainder of Class Members' lives is, Class Counsel believe, the best result for the Class. Courts "have afforded significant weight to the view of experienced counsel who have engaged in arms-length negotiations." *Austin*, 876 F. Supp. at 1457 (citing *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, MDL No. 969, U.S. Dist. LEXIS 17877 (E.D. Pa. Nov. 3, 1994)). It is the judgment of Class Counsel, who are highly experienced in this type of litigation, that the settlement is in the best interests of the Class. These final *Girsh* factors also support the fairness, reasonableness and adequacy of the settlement.

## III.   CONCLUSION

For the above reasons, the settlement is fair, reasonable and adequate under Fed. R. Civ.

P. 23(e)(2).  The parties jointly request that the Court grant final approval of the settlement.

Respectfully submitted,

SACHS WALDMAN P.C.

By: /s/ *Andrew Nickelhoff*
    Andrew Nickelhoff
    Marshall J. Widick
Class Counsel
1000 Farmer Street
Detroit, MI 48226
(313) 965-3464
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com

CLEARY & JOSEM, LLP

By: /s/ *William T. Josem*
William T. Josem
Attorneys for Defendants International Union
UAW and UAW Locals 677, 171, 1247, 2301
and 2420
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
(215) 735-9099 (telephone)
wtjosem@clearyjosem.com

LITTLER MENDELSON, P.C.

By: /s/ *Robert C. Drake*
Robert C. Drake, (PA #57177)
Thomas J. Bender (PA #25512)
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102-1321
rcdrake@littler.com
tbender@littler.com

Attorneys Mack Trucks, Inc.

Dated: August 24, 2011

Firmwide:103371605.2 057821.1001

18

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MACK TRUCKS, INC., | ) |
| Plaintiff, | ) Civil Action No. 2:07-cv-3737-RBS |
| v. | ) |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA-UAW, et al., | ) R. BARCLAY SURRICK<br>)<br>) **DECLARATION OF JOE HUXTA** |
| Defendants. | ) |
| MARTIN RACHILLA, JOSEPH E. CRAIG, JR., JOHN R. WAHLER, RONALD L. ROYER, DOROTHY GANTZ, CHARLES CULLEY DAVID MOORE, on behalf of themselves and a similarly situated class, and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA – UAW, | ) |
| Plaintiffs, | ) |
| vs. | ) |
| MACK TRUCKS, INC., and MACK TRUCKS, INC. RETIREE WELFARE BENEFIT PLAN, | ) |
| Defendants. | ) |

1.       I, Joe Huxta, Manager, Health Care Strategy, Corporate Human Resources, Mack Trucks, Inc., am over the age of 21 years, and fully qualified and competent to make the following Declaration in support of the parties' Joint Motion For Final Approval of Class Action Settlement in this matter.

2.       I was made responsible by Mack Trucks, Inc. for ensuring full compliance with the Order of Judge R. Barclay Surrick, dated May 12, 2011, as modified by subsequent Stipulation entered by the Court on June 3, 2011 requiring delivery of the Notice of Class Action Settlement to the home addresses of current eligible Retirees of Mack Trucks, Inc. and/or Surviving Spouses.

3.      I and/or members of my staff provided a complete list of names and home addresses of all eligible Retirees and Surviving Spouses to Pacesetter Enterprises, Inc., the printing and mass mailing vendor retained by me for the purpose of delivering the Notice of Class Action Settlement.

4.      Andy Lenig, Operations Manager, Pacesetter Enterprises, confirmed to me that on May 31, 2011, the Cover Letter from Class Counsel and the UAW, Notice of Class Action Settlement, the Settlement Agreement and all attachments thereto were that day received by the United States Postal Service for delivery to the home addresses of eligible Retirees and Surviving Spouses provided by Mack Trucks, Inc.

        I, Joe Huxta, declare under penalty of perjury that the foregoing is true and correct.

DATE: _8/24/11_                         BY: _Joe Huxta_
                                            JOE HUXTA

Firmwide:103450827.1 057821.1001

EXHIBIT B

# SACHS WALDMAN

### PROFESSIONAL CORPORATION
#### www.sachswaldman.com

ATTORNEYS AND COUNSELORS AT LAW
**1000 Farmer**
DETROIT, MICHIGAN 48226-2899

**(313) 965-3464**

Writer's Direct Dial: (313) 496-9429
Facsimile Number:   (313) 965-4602
E-Mail: anickelhoff@sachswaldman.com

BARRY P. WALDMAN
I. MARK STECKLOFF
MARY ELLEN GUREWITZ
GEORGE H. KRUSZEWSKI
GEORGE T. FISHBACK
JOHN R. RUNYAN, JR.
ANDREW NICKELHOFF
PATRICIA J. TARINI
BRIAN A. MCKENNA

MARSHALL J. WIDICK
LINDA TUREK
HOPE L. CALATI
DEREK L. WATKINS
JAMES A. BRITTON
AMY BACHELDER
EDMOND PRIFTI
JOSEPH PAWLICK

THEODORE SACHS
1928-2001
JAMES M. MONDRO
ROLLAND R. O'HARE
GREGORY M. JANKS
AMRIA N. AHMED
ANN E. NEYDON
CARLTON R. ROESER
OF COUNSEL

August 6, 2011

***via e-mail and First Class mail***

Clerk of the Court
U.S. District Court, Eastern Dist. of Pennsylvania
James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia,
Pennsylvania 19106

re:   *Mack Trucks, Inc. v. UAW et al.*
      *Consolidated Case No. 07-3737*

Dear Clerk of the Court:

   I am enclosing a copy of a letter that I received from Donald S Renner, objecting to the proposed class-action settlement in the above case.  I believe that Mr. Renner may not have filed this objection with your office.  Please enter this objection in the case record.

Yours truly,

Andrew Nickelhoff
Class Counsel

cc:   Robert C. Drake, Esq.
      John Widman, Esq.
      Michael F. Saggau, Esq.
      Marshall J. Widick, Esq.

O:\General\Nickelhoff\UAW\Mack\clerk.RennerObjection.ltr.wpd

AUG 0 3 2011

Donald S. Renner
3666 Mountain View Drive
Danielsville, Pa. 18038

July 29, 2011

Re: Mack Trucks v. UAW case no 7-3737

Dear Mr. Nickelhoff,

I am a retired worker of Mack Trucks . I started working for Macks on June 20, 1972 in the Machine Shop. When the machine shop closed  I ended up on the heavy line as utility worker.

Prior to 5C closing Mack had a problem with the tire rim assembly. I informed my boss of the problem. My partner and I were told by my boss to hammer it on which was wrong and dangerous. We followed his instructions a few times and at that point I refused to do it anymore. My boss approached me and asked why I was not being a team player. On April 28, 1987 approximately 2 weeks later I did what my boss instructed and ended 12 feet in the air and landed against a rack. I ended up on Workmen's Comp. For 10 years Mack fought me tooth and nail costing me $100,000.00 in legal fees. My arm was damaged and my lawyer told me Mack would not take me back to work.

All I wanted was to be treated like the other workers and retirees when I retired in 2004. The benefits were supposed to be vested for life. Now when we need the benefits the most we are being penalized by Macks.

Sincerely,

Donald S. Renner

Donald S. Renner

# SACHS WALDMAN

### PROFESSIONAL CORPORATION
#### www.sachswaldman.com

ATTORNEYS AND COUNSELORS AT LAW
**1000 FARMER**
DETROIT, MICHIGAN 48226-2899

BARRY P. WALDMAN
I. MARK STECKLOFF
MARY ELLEN GUREWITZ
GEORGE H. KRUSZEWSKI
GEORGE T. FISHBACK
JOHN R. RUNYAN, JR.
ANDREW NICKELHOFF
PATRICIA J. TARINI
BRIAN A. MCKENNA

MARSHALL J. WIDICK
LINDA TUREK
HOPE L. CALATI
DEREK L. WATKINS
JAMES A. BRITTON
AMY BACHELDER
EDMOND PRIFTI
JOSEPH PAWLICK

(313) 965-3464

Writer's Direct Dial: **(313) 496-9429**
Facsimile Number:    **(313) 965-4602**
E-Mail: anickelhoff@sachswaldman.com

THEODORE SACHS
1928-2001
JAMES M. MONDRO
ROLLAND R. O'HARE
GREGORY M. JANKS
AMRIA N. AHMED
ANN E. NEYDON
CARLTON R. ROESER
OF COUNSEL

August 10, 2011

*via e-mail and First Class mail*

Clerk of the Court
U.S. District Court, Eastern Dist. of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

re:    *Mack Trucks, Inc. v. UAW et al.*
       *Consolidated Case No. 07-3737*

Dear Clerk of the Court:

I am enclosing a copy of a letter that I received from Douglas K. Sherry and Carol H. Demkee, objecting to the proposed class-action settlement in the above case. I am forwarding Mr. Sherry's and Ms. Demkee's objection in case they have not been filed with your office.

Yours truly,

Andrew Nickelhoff
Class Counsel

cc:    Robert C. Drake, Esq.
       John Widman, Esq.
       Michael F. Saggau, Esq.
       Marshall J. Widick, Esq.

O:\General\Nickelhoff\UAW\Mack\clerk ltr Sherry&Demkee Obj.wpd

AUG 1 0 2011

DOUGLAS K. SHERRY
CAROL H. DEMKEE

118 South Berks Street
Allentown, Pa 18104
(610) 821-2716
geezer1044@verizon.net

SUBJECT: "MACK TRUCKS V. UAW CASE No 7-3737 - OBJECTION TO PROPOSED
SETTLEMENT"

August 8, 2011

Dear Sirs,

My wife and I have a combined 69 years of service with Mack Trucks and had adequate health coverage
until now.  It is insulting to have to justify, at our present ages, why we need a suitable health care
that should include dental and vision coverage.  Losing this coverage at this time of our life is devastating.
Our negotiators have been replaced, retired or moved on and now we have no choice but to accept the
health care package that has been offered by Volvo.
The offer is this package or nothing.  Would you be satisfied with our contract? Is this really the only
solution? The retirees whose budget has been stretched thin by the rising cost of living, can not afford to
add more health care cost to their budget. What has happened to employers doing the "right thing? We are
only asking for what we were promised during our working career at Mack Trucks. I am 66 years old and
my wife is 58 years old. In our first year of retirement we have spent over $2,000 out of pocket in health
care. We can only hope and pray that we have a advocate in the court system and fairness will prevail.

Sincerely,

Douglas K. Sherry
Carol H. Demkee

AUG 0 9 2011

Louis J. DeNardo, Jr.
501 Decatur Avenue
Middlesex, NJ  08846
August 5, 2011

Clerk of Court
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA  19016

Attn:  Hon. R. Barclay Surrick

Re:  Mack Trucks v. UAW, Case No. 7-3737 – Objection to Proposed Settlement

Dear Sir:

We need your help!  When I retired on December 1, 2004, I was given the attached documents, Exhibits A, B, and C.  Many other retirees were given the same documents.  I specifically make reference to points 1 and 2 of Exhibit C.

Paul R. Brown, UAW Pension and Health Insurance representative, and Mack Trucks representative Diane Gergar were both at my retirement departure meeting.  There was at no time during the meeting any indication by either of them that the terms in Points 1 and 2 were temporary or could change.  After several notices from Mack Trucks, Inc. and the UAW about possible benefit reductions, we've reached this point.

I can understand responsible parties negotiating to resolve a lawsuit.  I cannot understand or accept what they have done to retirees who had no input in the process.  It appears that Mack/Volvo and several younger UAW negotiators tried to expedite a resolution on the backs of current retirees.

Any changes to what was promised to myself and others should have been grandfathered in for the current workforce.  What was promised to retirees is not an entitlement.  I, with forty plus years of service, and others like myself worked most of our lives for Mack and made many sacrifices for this company.  We earned what they promised us (in writing) through hard work and dedication.

In approximately 1985, many current retirees took substantial pay cuts for the good of the company.  My contribution was $44 a week when my children were only

four and seven years old. This was just after then-president Jack Curcio and his management team left with millions of dollars in golden parachutes and buyouts.

After that UAW workers struggled to regain what was taken away and I don't believe we ever did. Our cost of living adjustments were constantly going down with new formulas implemented. Retiree bonuses were suspended in one contract for the first time ever. Retiree benefits were being referred to as legacy costs by Mack accountants at employee general meetings.

Keep in mind sir that we had no 401K plan until just a few years ago. It was always a defined benefit pension. Now my pension is $150 a month less due to my benefit contribution along with the takeaways in Exhibit C, Point 1 and 2. My out-of-pocket expenses are much higher due to the new Aetna health plan. Now I am being advised that my contribution most likely will rise in the future. Some rude awakening after 40 years of hard work and sacrifice.

I understand that this is about helping Mack succeed which I hope they do. However, any future success should also be tied to the glue that held this company together all these years—UAW Mack retirees. This time we need to be paid back our hard-earned compensation.

We were all part of the "Mack family" and lived by the Bulldog code of ethics. Now at our age, when family usually stands by their elders, we are being abused by both Mack and the UAW.

Why do retirees lose their insurance while current workers receive an increase? Why do retirees have to pay for health care while others get $50,000 buyouts to help ratify the contract which helped to create this situation?

Sir, I hope you can at least help with the terms of this settlement. We are the most senior former workers in this dispute. The UAW and Mack both recognized and honored our seniority with many service awards through the years. We should not be abandoned now and put through undeserved hardship because of a new owner (Volvo) and a bad economy. Also, were our veterans forgotten in this process? Shouldn't they all have been contributing the lowest amount for health care?

In addition, allowing a foreign corporation like Volvo to completely sever its ties with American retirees, when the financial obligation is unclear, should not become a precedent. Volvo knew what it bought when it took control of Mack Trucks.

3

If you approve this VEBA settlement, current retirees should be linked to Mack/Volvo for at least 10 more years if a turnaround comes. All current retirees should be made whole for their financial contributions for health care and all of the benefits which were promised to us should be restored.

These commitments were made by Mack and the UAW year after year after year. The benefits described in Exhibit C were an integral part of a compensation package for a life's work. The money was there and more than likely will be there again in the future. To allow a few to appropriate it in a way to negatively impact the many retirees who gave so much is fundamentally wrong.

We made our sacrifices for Mack over a <u>lifetime</u>! Equality of sacrifice now should be for the current workforce, <u>not for retirees</u>. We trusted Mack Trucks most of our working lives. Now we put our trust in you to help us change the terms of this proposed settlement as it relates to current retirees.

Respectfully,

Louis DeNardo, Jr.
UAW/Mack retiree

cc:   Andrew Nickelhoff, Class Counsel
      Michael Nicholson, UAW General Counsel
      Therence O. Pickett, VP & General Counsel, Mack Trucks

*EXHIBIT A*

Board Of Administration

# MACK - UAW PENSION PLAN

BOX M

ALLENTOWN, PENNSYLVANIA 18105-5000

November 11, 2004

Louis J. DeNardo, Jr.
501 Decatur Ave.
Middlesex, NJ 08846

Re: Retirement Benefits

Dear   Mr. DeNardo:

    This is to inform you that the Mack-UAW Joint Pension Board of Administration has approved your application for pension benefits.  Your benefits are outlined on the enclosed topsheet effective on the dates shown.

    You should receive your first check on or about   Nov. 24th  dated December 1, 2004.

    If a request for direct deposit was received in our office by the 15th of the month prior to your first check, you will receive a stub confirming your  check was deposited into your bank account.

    Please notify this office promptly if you should change your permanent mailing address or if you have a change in marital status.

    If you have any questions regarding your retirement benefits, please contact your pension representative or our toll free number 1 (800) 292-MACK (6225); or if you are in the Lehigh Valley area (610) 709-2624 and select 2, 1 and 1 when you receive the menu selection on either line.

Sincerely,

Diane M. Gergar/RZ
Clerk of the Board

Enclosure

*EX HIBIT    B*

## MACK-UAW JOINT PENSION BOARD OF ADMINISTRATION
#2       **TOPSHEET FOR THE REGULAR EARLY RETIREMENT**

| | | | |
|---|---|---|---|
| OF: | **Louis J. DeNardo, Jr.** | BADGE: | 100-82827 |
| | 501 Decatur Ave. | | |
| | Middlesex, NJ 08846 | SENIORITY DATE: | 2 / 5 / 1965 |
| SOC. SEC. NUMBER: | 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 | CREDIT SERVICE: | 40.0 |
| LOCATION: | WH-OBU | AGE AT DATE OF RETIRE. | 60 / 9 |
| LAST DAY AT WORK: | 11 / 30 / 2004 | PENSION TYPE: | 30 & OUT AT AGE 60 |
| DATE OF RETIREMENT: | 12 / 1 / 2004 | SPOUSE SOC. SEC. NO.: | 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 |
| DOB: | 2 / 25 / 1944 | SPOUSE'S DOB: | 8 / 14 / 1950 |
| DATE OF MARRIAGE: | 4 / 12 / 1975 | AGE DIF.: | 6 |
| SURV. OPTION ELECTION: | YES | COMMENCEMENT DATE: | 12 / 1 / 2004 |

LOST TIME DUE TO LAYOFF ON OR AFTER JANUARY 1, 1984:          N/A
ADJUSTED CREDITED SERVICE  DUE TO LAYOFF ON OR AFTER 01/01/1984:    40.0
PERCENTAGE AFTER REDUCTION FOR SURVIVOR OPTION (if applicable):    100.0%

PERCENTAGE AFTER REDUCTION FOR EARLY RETIREMENT (prior to age 62):    91.7%

FIRST PAY DATE:       12 / 1 / 2004

<u>MONTHLY BENEFIT AMOUNTS:</u>

1. LIFE INCOME BENEFIT:           $1,467.20

2. SUPPLEMENTAL ALLOWANCE:      $882.80

3. SPECIAL AGE 65 BENEFIT:       $66.60

4. SPOUSE'S SPECIAL AGE 65 BEN.:      $66.60      ** If Applicable

5. SURVIVOR PENSION BENEFIT:      $880.00    SPOUSE NAME:  Jane

<u>SCHEDULE OF MONTHLY PAYMENTS AND CHANGES:</u>

| PAYMENT | PERIOD PAYABLE | | | | | REASON |
|---|---|---|---|---|---|---|
| $2,350.00 | FROM | 12 / 1 / 2004 | TO | 3 / 31 / | 2006 | Regular Benefit |
| $1,600.00 | FROM | 4 / 1 / 2006 | TO | 1 / 31 / | 2009 | Post 62 +1 |
| $1,666.60 | FROM | 2 / 1 / 2009 | TO | 7 / 31 / | 2015 | Regular Benefit Plus Retiree Special Age 65 Benefit |
| $1,733.20 | FROM | 8 / 1 / 2015 | TO | Life | | Regular Benefit Plus His & Her Special Age 65 Benefit |

*Ex HiBit*
*C*

* * * * **PLEASE KEEP FOR FUTURE REFERENCE** * * * *

EFFECTIVE DATE 12-1-2004         SERVICE 40 0      AGE 60-9

TYPE OF AWARD Early             SURVIVOR BENEFIT $880.00

DEDUCTIONS: IRS                 U.A.W. DUES

**2004** SOCIAL SECURITY EARNINGS LIMITATION    $11,640. ANNUALLY
   ◆ $970. MONTHLY--UNDER FULL RETIREMENT AGE--FIRST YEAR OUT.
   ◆ UNLIMITED EARNINGS AFTER FULL RETIREMENT AGE.
*Please note the following:*

1. Free lifetime medical, surgical, hospitalization, prescription, dental, vision care coverage, hearing aid benefit, and blood program for you and your spouse.

2. Life insurance $49,000 present coverage to age 65.  Then $12,500 at no cost to you for the remainder of your life.

3. Accrued vacation in final pay which will be mailed to you.

4. You are requested to join the U.A.W. Retired Workers' Chapter, which meets every Wednesday at 1:00PM, in the Union Hall, 2101 Mack Blvd. Business meetings are held the second Wednesday of every month.

5. Following your retirement luncheon at Mack World Headquarters, stop in at the Union Hall to pick up your retirement clock and lapel pin for the Union.  Your LIFETIME MEMBERSHIP CARD will be mailed to you.

6. Benefits received from the pension trust are subjected to income tax and declarable.  A W4-P form may be filled out upon retirement with deductions taken monthly or income can be estimated with tax paid in advance each quarter at the IRS office.

7. Call your Regional Social Security Office thirty (30) days prior to age 62.  You will need proofs of age, Social Security Numbers, W-2 forms of previous year and earnings of current year for you and your spouse.

8. If you are a T&P pension (after two [2] years of social security disability) you are eligible for Medicare.  When you receive a Medicare card, you **must** supply a copy to the Pension Department at World Headquarters, to get reimbursement for the cost.

9. Apply for Medicare part "B" at age 65.  If you do not, the Company will only pay 20% of medical-surgical bills under Equicor/CIGNA.
ADDRESS TO SEND COPIES & CORRESPONDENCE:

|  |  |
|---|---|
| **Mack Trucks, Inc.** | **PENSION DEPT PHONE NUMBERS:** |
| Attn:  Pension Dept. | Diane Gergar |
| Box M | 1-800-292-MACK (6225) or |
| Allentown, PA 18105 | (610)-709-3270 |

06/04                           **Paul R. Brown**
U.A.W., Local 677               Pension Rep & Health Insurance
Union Hall Office               Wednesdays 7AM - 3PM Union Hall (610) 797-7737
(610) 797-7722                  Macungie Conference Room (610) 966-8884

AUG 1 2 2011

Richard A. DeNardo
4220 Little Falls Dr.
Cumming, Ga. 30041

August 7, 2011

Clerk of Court
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, Pa.   19016

Attn:  Hon. R. Barclay Surrick

Re:  Mack Trucks v. UAW, Case No. 7-3737 – Objection to Proposed Settlement

Dear Sir:

What has happened to America?  I write this letter on one of the saddest days in this country.
We have lost 30 American Service men in Afghanistan, which included 22 of our finest Navy
SEALS.

My brother Louis and I were employed by Mack Trucks for a combined service of 60+ years.
During that time, we were also asked to go off and serve our country to protect the rights and
freedom for all Americans and were fortunate enough to return.

We are now at a point in our lives where we have lost 40% of our investments, half the value of
our homes, part of our health care was taken away, which included Dental, Vision, Hearing and
Life Insurance, and now Mack Trucks/Volvo and the UAW have conveniently joined forces in
an attempt to throw a VEBA Trust Fund Settlement to us, which is short of what was originally
promised for all our years of service.

I make reference to the following documents Exhibit A & B – which were presented to me upon
retirement by Paul R. Brown, UAW Pension & Health Insurance Representative, and Mack
Trucks, Sharon G. Correll, Manager Health & Insured Benefits.  The document clearly states the
free lifetime benefits we were entitled to.  There was at no time during the meeting any
indication by either party that benefits were temporary nor could change and were not vested.

During retirement, I received numerous notices from Mack Trucks regarding health care costs.  It
was obvious to me, they were setting the stage for possible benefit reductions, which would
destroy and put a hardship on 9,300 current retirees.  Your Hon. R. Barclay Surrick, how could
you in good conscience and fairness for all under our current legal system, have a foreign
corporation (Volvo) come into this country and bring before the courts a law suit contesting that
we are not vested, which has always been an honored practice by both Mack Trucks and the
UAW for prior retirees?

Ultimately, we are now at a point where it is a game show, "Let's Make a Deal" and as usual the Corporation wins and we LOSE.

In closing, I wholeheartly object to this Proposed Settlement. This is neither fair nor adequate for the current retirees of Mack Trucks. I put my trust in you to help us change the terms of this Proposed Settlement as it relates to current retirees.

NOTE: In the past there were 3 generations of Bethlehem Steel employees in Pennsylvania who lost their health care, also in the Pennsylvania judicial court system. There's definitely something wrong with this system and you are the only one that could correct this injustice that is being done.

Respectfully,

Richard A. DeNardo
UAW/Mack Retiree

cc: Andrew Nickelhoff, Class Counsel
    Michael Nicholson, UAW General Counsel
    Therence O. Pickett, VP & General Counsel, Mack Trucks

Att: Exhibit A & B

**\* \* \* \* PLEASE KEEP FOR FUTURE REFERENCE \* \* \* \***

EFFECTIVE DATE _3 -1 -2001_   SERVICE _22.1_   AGE _55-0_

TYPE OF AWARD _EARLY (SPECIAL)_   SURVIVOR BENEFIT _$405.98_

DEDUCTIONS: IRS _S-0 (174.00) +300.00_ U.A.W. DUES _(NO)_

<u>2001</u> SOCIAL SECURITY   $10,680   ANNUAL $ 890 MONTHLY—UNDER AGE 65
EARNINGS LIMITATION – OVER AGE 65 UNLIMITED EARNINGS

*Please note the following:*

1. Free lifetime medical, surgical, hospitalization, prescription, dental, vision care coverage, hearing aid benefit, and blood program for you and your spouse.

2. Life insurance _$46,000_ present coverage to age 65. Then _$11,500_ at no cost to you for the remainder of your life.

3. Accrued vacation in final pay which will be mailed to you.

4. You are requested to join the U.A.W. Retired Workers' Chapter, which meets every Wednesday at 1:30PM, in the Union Hall, 2101 Mack Blvd. Business meetings are held the second Wednesday of every month.

5. Following your retirement luncheon at Mack World Headquarters, stop in at the Union Hall to pick up your retirement clock and lapel pin for the Union. Your LIFETIME MEMBERSHIP CARD will be mailed to you.

6. Benefits received from the pension trust are subjected to income tax and declarable. A W4-P form may be filled out upon retirement with deductions taken monthly or income can be estimated with tax paid in advance each quarter at the IRS office.

7. Call your Regional Social Security Office thirty (30) days prior to age 62. You will need proofs of age, Social Security Numbers, W-2 forms of previous year and earnings of current year for you and your spouse.

8. If you are a T&P pension (after two [2] years of social security disability) you are eligible for Medicare. When you receive a Medicare card, you **must** supply a copy to the Pension Department at World Headquarters, to get reimbursement for the cost.

9. Apply for Medicare part "B" at age 65. If you do not, the Company will only pay 20% of medical-surgical bills under Equicor/CIGNA.

ADDRESS TO SEND COPIES & CORRESPONDENCE:

**Mack Trucks, Inc.**
Attn: Pension Dept.
Box M
Allentown, PA 18105

11/00
U.A.W., Local 677
Union Hall Office
(610) 797-7722

PENSION DEPT PHONE NUMBERS:
Lorraine Miller
1-800-292-MACK (6225) or
(610)-709-2624

**Paul R. Brown**
Pension Rep & Health Insurance
Wednesdays 7AM – 3PM Union Hall (610) 797-7737
Macungie Conference Room (610) 966-8884

WORLD HEADQUARTERS
2100 MACK BOULEVARD
BOX M
ALLENTOWN, PA 18105-5000



TELEPHONE 1-800-292-6225
(610) 709-2624

February 26, 2001

Mr. Richard Denardo
606 Clinton Avenue
Middlesex, NJ  08846

Dear Mr. Denardo:

We have been notified that you will be retiring effective March 1, 2001.  Under the terms of the present
U.A.W. Insurance Program, you are entitled to the following effective with your date of retirement:

1)  $46,000 of Non-Contributory Group Term Life Insurance.  This reduces to $11,500 the first
of the month after your attainment of age 65.  Please complete the enclosed life insurance
card, whereon you will designate a beneficiary.

2)  Accidental Death and Dismemberment Insurance of $23,000.  This insurance ceases upon
your attainment of age 65.

3)  Hospital, Surgical, Medical, Prescription Drug, Dental and Vision coverage.  Please complete
the enclosed enrollment form and list any eligible dependents.  You must include a copy of
your marriage certificate if listing a spouse, as well as a birth certificate of any dependent
children.  Enclosed is a copy of the current U.A.W. Insurance Program and information which
describes the medical program in more detail.

Please return the above requested information as soon as possible using the enclosed postage paid return
envelope.  You will subsequently receive your health benefits I.D. cards.

Thank you.

Sincerely,

Sharon G. Correll
Manager, Health & Insured Benefits

Enclosure
SGC/djl/denardo

Gave up to Lorraine

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MACK TRUCKS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 2:07-cv-3737-RBS |
| | ) | |
| **v.** | ) | |
| | ) | R. BARCLAY SURRICK |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE | ) | |
| & AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA-UAW, et | ) | |
| al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| MARTIN RACHILLA, JOSEPH E. | ) | |
| CRAIG, JR., JOHN R. WAHLER, | ) | |
| RONALD L. ROYER, DOROTHY | ) | |
| GANTZ, CHARLES CULLEY, DAVID | ) | |
| MOORE, on behalf of themselves | ) | |
| and a similarly situated class, and | ) | |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE & | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA – UAW, | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| MACK TRUCKS, INC., and MACK | ) | |
| TRUCKS, INC. RETIREE WELFARE | ) | |
| BENEFIT PLAN, | ) | |
| **Defendants.** | ) | |
| | ) | |

### SUPPLEMENTAL DECLARATION OF SUZANNE TARANTO

I, Suzanne Taranto, declare as follows:

1.  I previously provided a declaration dated March 17, 2011 outlining the actuarial analysis performed by Milliman Inc. on behalf of the International Union, UAW (UAW) relative to the health benefit programs provided by Mack Truck (Mack) in which UAW active and retired members participate. In that analysis, we determined that based on the data, methods and assumptions described in the declaration, including the 7.5% long-term asset return assumption, the VEBA was estimated to have 85% of the assets required to provide the Modified Plan benefits as of January 1, 2011.

2.  We have also been requested to provide additional information on the funded status of the VEBA using alternative long term asset return assumptions. In particular, we have been asked to provide the funded status assuming both a 5.5% and 6.5% long term return assumption. The rests are detailed below as of January 1, 2011 and estimated at January 1, 2012:

| Funded Status | Long Term Return Assumption | | |
|---|---|---|---|
| as of: | 5.5% | 6.5% | 7.5% |
| January 1, 2011 | 65% | 75% | 85% |
| January 1, 2012 | 66% | 76% | 87% |

3.  Based on Milliman's work with other independent UAW VEBA trusts, we understand that the Trustees of those VEBAs have selected investment policies with long term investment performance expectations that range, based on the assumptions being used by their investment professionals, from 5.5% to 7.0%. These projected returns are based on underlying capital market assumptions, are generally reviewed annually and often change over time, particularly with respect to long term CPI expectation.

4.  It is not possible to predict with certainty, particularly given the current unsettled state of the economy and investment markets, the annual investment return the VEBA will achieve over the next several decades. If the VEBA were to invest in a traditional mix of 60% equities and 40% bonds, actuarial and financial projections indicate that the VEBA would earn an annual average return of approximately 7.5%. If a projected 7.5% annual rate of return is realized, the funding obtained by the Settlement is actuarially projected to be sufficient to fund 85% of the current plan of benefits as of January 1, 2011, as shown above. If the VEBA assets are invested with lower equity exposure, the projected average annual return would be expected to be less, which would mean that the projected funded percentage of the current plan of benefits would be lower.

5.  We cannot predict with any certainty how the Mack VEBA assets will be invested once it is established, and what average annual return will be received. Certainly, actual experience will vary from expected for any number of reasons.

6.  All assumptions, methods, plan provision, reliances and limitations from my previous declaration of March 17, 2011 apply here.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Woodland Park, New Jersey this 23th day of August, 2011.

Suzanne Taranto

## CERTIFICATE OF SERVICE

I, Robert C. Drake, hereby certify that on this 24th day of August , 2011, I filed with the

Court the foregoing Joint Motion for Final Approval of Class Action Settlement,

Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement

and Proposed Order Granting Joint Motion for Final Approval of Class Action Settlement

via the Court's Electronic Filing System and served the same on the same method upon

the following:

> Andrew Nickelhoff
> Marshall J. Widick
> SACHS WALDMAN P.C.
> 1000 Farmer Street
> Detroit, MI 48226
> anickelhoff@sachswaldman.com
> mwidick@sachswaldman.com
> *Class Counsel*
>
> William T. Josem
> CLEARY & JOSEM, LLP
> One Liberty Place, 51st Floor
> 1650 Market Street
> Philadelphia, PA 19103
> wtjosem@clearyjosem.com
> *Attorneys for Defendants International Union*
> *UAW and UAW Locals 677, 171, 1247, 2301*
> *and 2420*

> */s/ Robert C. Drake*
> Robert C. Drake