<u>EXHIBIT A</u> **to Supplemental Memorandum**

**In support of Joint Motion for Final Approval of Settlement Agreement**

## TRUST AGREEMENT
## UAW RETIREES OF MACK TRUCKS HEALTH BENEFIT FUND

THIS TRUST AGREEMENT, effective on the Initial VEBA Funding Date as that term is defined in the Settlement Agreement, by and among, Jack Martin, Suzanne Paranjpe, Francine Parker, Gary Petroni, _____, _____, _____, (collectively, the "Committee") and _____, a _____ (the "Trustee").

### PREAMBLE

WHEREAS, Mack Trucks, Inc. ("Mack") and A.B. Volvo, Inc., and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), and the Class Representatives of the plaintiff class members in the consolidated case captioned as *Mack Trucks, Inc. v. UAW et al.*, E.D. Pa. civil action No. 2:07-cv-03737-RBS ("Consolidated Case"), have entered into an agreement for settlement of the Consolidated Case ("Settlement Agreement") that, subject to Court approval and other stated conditions, provides for Mack to make certain contributions to a trust (the "Trust") to be established to help fund certain benefits provided to certain Mack retirees and other eligible individuals;

WHEREAS, the Settlement Agreement contemplates a Committee, as more fully defined herein (the "Committee"), to establish and administer such Trust;

WHEREAS, such Committee shall determine the benefits to be provided by such Trust and shall constitute the settlor of the Trust and shall be responsible for sponsoring and administering the "New Plan" as defined in the Settlement Agreement, or any successor thereto (herein, the "Plan");

WHEREAS, by an order dated _____, the Court approved the Settlement Agreement;

WHEREAS, through operation of such order the Committee was formed;

WHEREAS, the Committee is willing to exercise the authority granted to it herein with regard to the Trust and Plan;

WHEREAS, the Committee through this Trust Agreement designates the Trustee to serve in such capacity and to maintain custody of the Trust assets;

WHEREAS, the Trustee is willing to receive, hold, and invest the assets of the Trust in accordance with the terms of this Trust Agreement; and

WHEREAS, the Trust is intended to comply with the requirements of sections 419A(f)(5)(A) and 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and section 302 of the Labor Management Relations Act of 1947, as amended ("LMRA").

NOW THEREFORE, in consideration of the premises and the covenants contained herein, the Committee and the Trustee agree as follows:

ARTICLE I
DEFINITIONS

Section 1.1    Authorized Investments.  Subject to any investment guidelines established by the Committee and communicated to the Trustee pursuant to Section 10.4 hereof, "Authorized Investments" shall not be limited to investments that are defined as legal investments for trust funds under the laws of any jurisdiction and shall include, but shall not be limited to, (i) cash equivalents held in interest bearing accounts; (ii) bonds, debentures, notes, or other evidences of indebtedness; (iii) stocks (regardless of class), or other evidences of ownership, in any corporation, partnership, mutual investment fund (including funds for which the Trustee or an affiliate thereof serves as investment manager), investment company, association, joint venture or business trust; and (iv) investment contracts issued by legal reserve insurance companies.

Section 1.2    Chair.  The Member selected pursuant to Section 9.5 to perform the functions described in Article IX.

Section 1.3    Code.  The Internal Revenue Code of 1986, as amended, and any successor statute thereto.

Section 1.4    Committee.  The group of Independent Members and UAW Members named pursuant to this Trust to continue and manage the Trust, to sponsor and administer the Plan, and to serve as the "named fiduciary" of the Plan within the meaning of section 402(a)(2) of ERISA.

Section 1.5    Consolidated Case.  The consolidated actions captioned as *Mack Trucks, Inc. v. UAW et al.*, (E.D. Pa. civil action No. 2:07-cv-03737-RBS) including *Rachilla et al. v. Mack Trucks, Inc. and Mack Trucks Inc. Retiree Welfare Benefit Plan*, (E.D. Pa. civil action No. 5:09-cv-00622-TMG).

Section 1.5    ERISA.  The Employee Retirement Income Security Act of 1974, as amended, and any successor statute thereto.

Section 1.6    Independent Member.  An individual person who serves as a member of the Committee and is not appointed by UAW or Mack, who satisfies the requirements of Section 9.1, and whose experience in such fields, without limitation, as health care, employee benefits, asset management, human resources, labor relations, economics, law, accounting or actuarial science indicates a capacity to fulfill the powers and duties of Article X in the manner described in Section 10.11, and wherever practicable, helps to provide a range of relevant experiences to the Committee (and including the initial Independent Members).

Section 1.7    Investment Manager.  An investment manager within the meaning of section 3(38) of ERISA appointed by the Committee in accordance with the provisions of Section 10.5 hereof.

Section 1.8    LMRA.  The Labor Management Relations Act of 1947, as amended, and any successor statute thereto.

Section 1.9    Mack.  The term "Mack" means Mack Trucks, Inc.

Section 1.10    Member.  A member of the Committee or his or her successor.

Section 1.11    Participant.  The term "Participant" means a "Class Member" or a member of a "Covered Group," as those terms are defined in the Settlement Agreement, who are eligible for coverage under the VEBA in accordance with the Settlement Agreement.

Section 1.12    Plan.  The term "Plan" means the "New Plan" as defined in the Settlement Agreement, as adopted and as may be amended from time to time by the Committee, as specified herein.

Section 1.13    Restructured Retiree Plan.  The term "Restructured Retiree Plan" shall have the same meaning as in the Settlement Agreement.

Section 1.14    Settlement Agreement.  The Settlement Agreement entered into by Mack, A.B. Volvo, Inc., the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), and the Class Representatives of the plaintiff class members in settlement of the Consolidated Case, which is attached hereto as Exhibit A.

Section 1.15    Trust Agreement.  This agreement as it may be amended thereafter from time to time by the Committee.

Section 1.16    Trust or Trust Fund.  The UAW Retirees of Mack Trucks Health Benefit Fund established under this Trust Agreement, comprising all property or interests in property held by the Trustee from time to time under this Trust Agreement.

Section 1.17    Trustee.  The entity referred to in the Preamble to this Trust Agreement named to perform the duties set forth in this Trust Agreement, or any successor thereto appointed by the Committee in accordance with Section 8.3.  Any corporation continuing as the result of any merger or consolidation to which the Trustee is a party, or any corporation to which substantially all the business and assets of the Trustee may be transferred, will be deemed automatically to be continuing as the Trustee.

Section 1.18    UAW.  The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), and any successor thereof.

Section 1.19    UAW Member.  An individual person who serves as a member of the Committee and is appointed by the UAW pursuant to the terms of Article IX of this Trust Agreement (and including the initial UAW Members).

Section 1.20    The term "VEBA Administration Date" shall have the same meaning as in the Settlement Agreement.

## ARTICLE II
## PARTICIPATION

Section 2.1     Eligibility for Participation.  A Participant may receive benefits from the Trust with respect to claims incurred on and after the VEBA Administration Date pursuant to the Plan adopted by the Committee in its discretion exercising the powers provided to it under Article X.  In exercising its authority under Article X, the Committee may design the Plan to provide for separate bases of participation in the Plan with respect to classes of Participants as set forth from time to time in the Plan. Participation in the Plan is contingent on the Participant's satisfying any conditions set forth therein from time to time. Notwithstanding anything stated herein, the Committee shall not alter the eligibility requirements for participation in the Plan for Retirees, Spouses and Surviving Spouses as set forth in the Restructured Plan attached to the Settlement Agreement as Exhibit A.

Section 2.2     Determination by Committee.  Any determination regarding the status of any individual as a Participant under the Plan shall be solely and exclusively the responsibility of the Committee.

## ARTICLE III
## ESTABLISHMENT OF TRUST

Section 3.1     Purpose.  The Trust was established and is continued for the purpose of providing health and welfare benefits to the Participants in accordance with the Plan and as are permissible under sections 419A(f)(5)(A) and 501(c)(9) of the Code as set forth herein; and upon termination of the Trust, to provide such benefits to such persons as are permissible under section 501(c)(9) of the Code as set forth herein.  The Trust, together with the Plan, is intended to constitute a "voluntary employees' beneficiary association" under section 501(c)(9) of the Code.

Section 3.2     Receipt of Funds.  The Trustee shall accept all sums of money contributed or paid to the Trust pursuant to Article IV as directed by the Committee.  The Trustee shall hold, manage and administer the Trust Fund without distinction between principal and income.  The Trustee shall be accountable for the contributions or transfers it receives, but shall not be responsible for the collection of any contributions or transfers to the Trust.

Section 3.3     No Diversion.  Except as otherwise provided herein, at no time shall any part of the corpus or income of the Trust Fund be used for or diverted to purposes other than the exclusive benefit of the Participants including, as necessary, reasonable costs of establishment, amendment and administration of the Trust and the Plan; and at no time shall any part of the net earnings improperly inure to the benefit of any private individual as provided in section 501(c)(9) of the Code and section 1.501(c)(9)-4 of the Treasury Regulations promulgated thereunder.

Section 3.4     Fiduciary Duties.  Except as otherwise provided herein, the responsibilities of each fiduciary as such shall be limited to the performance of those duties specifically assigned to it hereunder.  No fiduciary shall have any responsibility for the performance of any duty not specifically so assigned, except to the extent such responsibility is imposed by applicable law.  The Committee shall be the named fiduciary (as defined in section 402(a)(2) of ERISA) hereunder with authority to control and manage the operation of the Trust to the extent set forth herein and in the Plan.

Section 3.5     No Guarantee.  Nothing contained in the Trust or the Plan shall constitute a guarantee that the assets of the Trust Fund will be sufficient to pay any benefit to any person or make any other payment.  The obligation of the Plan to pay any benefit provided under the Plan is expressly conditioned on the availability of cash in the Trust to pay the benefit, and no plan fiduciary or any other person shall be required to liquidate any Plan asset in order to generate cash to pay benefits or claims.  Mack has no obligation to contribute any amount to the Trust except as provided in the Settlement Agreement.  Except for payments of benefits under the Plan, no Participant shall receive any distribution of cash or other thing of current or exchangeable value, either from the Committee or the Trustee, on account of or as a result of the Trust Fund created hereunder.

Section 3.6     No Interest.  Mack shall have no legal or equitable interest in the assets of the Trust Fund at any time, including following the termination of the Trust.

ARTICLE IV
CONTRIBUTIONS TO THE TRUST FUND

Section 4.1     Mack Contributions.  The Trust Fund shall accept Mack payments to the Trust Fund, which are specified in the Settlement Agreement.

Section 4.2     Medicare or Governmental Payments or Subsidies.  The Trust Fund may accept contributions or payments constituting Medicare Part D subsidies or other health care related subsidies, rebates, refunds, reinsurance, or other payments relating to the benefits provided to Participants pursuant to the Plan and Trust.

Section 4.3     Participant Contributions.  The Trust Fund shall accept contributions from Participants as permitted or required by the Committee, including, without limitation, any amounts remitted from any Mack pension plan at the direction of a retiree as a voluntary forwarding of benefit payments as permitted by ERISA.

ARTICLE V
PAYMENTS FROM THE TRUST FUND

Section 5.1     Payments from the Trust Fund.

(a)     Except as provided in paragraph (b) below, the Trustee shall make payments from the Trust Fund to pay benefits under the Plan as directed by the Committee or its designee.

(b)     To the extent permitted by law, the Trustee shall be fully protected in making payments out of the Trust Fund, shall have no responsibility to see to the application of such payments or to ascertain whether such payments comply with the terms of the Plan, and shall not be liable for any payment made by it in good faith and in the exercise of reasonable care without actual notice or knowledge of the impropriety of such payments hereunder.  The Trustee may withhold all or any part of any payment as the Trustee in the exercise of its reasonable discretion may deem proper to protect the Trustee and the Trust against any liability or claim on account of any income or other tax whatsoever; and with all or any part of any such payment so withheld, may discharge any

such liability.  Any part of any such payment so withheld by the Trustee that may be determined by the Trustee to be in excess of any such liability will upon such determination by the Trustee be paid to the person or entity from whom or which it was withheld.

Section 5.2    Method of Payments.  The Trustee may make any payment required to be made by it hereunder, unless directed otherwise by the Committee, by direct electronic deposit of the amount thereof to the financial institution where the person or entity to whom or to which such payment is to be made maintains an account, or by mailing a check in the amount thereof by first class mail in a sealed envelope addressed to such person or entity to whom or to which such payment is to be made, according to the direction of the Committee.  If any dispute arises as to the identity or rights of any person who may be entitled to benefits hereunder, the Trustee may withhold payment until such dispute is resolved by a court of competent jurisdiction or, at the discretion of the Committee, is settled by written stipulation of the parties concerned.

Section 5.3    Excessive Payments.  If the payment of any benefit under the Plan is determined to have been excessive or improper, and the recipient thereof fails to comply with the Committee's request to repay such excessive or improper payment, then the Committee may direct that the amount of such excessive or improper payment be deducted from any other benefits thereafter payable to such person. Until repaid to the Trustee or Trustee's agent, the amount of said excessive or improper payment shall not be included in the Trust Fund.

## ARTICLE VI
## TRUSTEE POWERS AND DUTIES

Section 6.1    Directed Powers of the Trustee.  The Trustee shall be fully directed by the Committee, or any Investment Manager appointed pursuant to Section 10.5; the Trustee shall have no discretionary authority over the investment of the Trust Fund. Such directions shall be provided in concert with the funding policy established by the Committee and communicated to the Trustee pursuant to Section 10.3 and any investment guidelines established by the Committee and communicated to the Trustee under Section 10.4. In addition to the powers customarily vested in trustees by law, the Trustee shall have the following powers:

(a)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, with any cash at any time held by it, to purchase or subscribe for any Authorized Investment, and to retain such Authorized Investment in the Trust Fund.

(b)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to sell for cash or, with the consent of the Committee, on credit, convert, redeem, exchange for another Authorized Investment, or otherwise dispose of, at any time, any Authorized Investment held by it.

(c)    To retain uninvested all or any part of the Trust Fund, which shall be deposited in an interest-bearing account in any banking or savings institution, including an account established in the name of the Trustee if the Trustee is a depository institution;

(d)      Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to exercise any option appurtenant to any Authorized Investment in which the Trust Fund is invested for conversion thereof into another Authorized Investment, or to exercise any rights to subscribe for additional Authorized Investments, and to make all necessary payments therefore.

(e)      Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to join in, consent to, dissent from or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, or readjustment of the finances of any corporations, entities or properties in which the Trust Fund may be invested, or the sale, mortgage, pledge, or lease of any such property or the property of any such corporation or entity; to do any act (including the exercise of options, making of agreements or subscriptions, and payment of expenses, assessments, or subscriptions) which may be deemed necessary or advisable in connection therewith; and to accept any Authorized Investment which may be issued in or as a result of any such proceeding, and thereafter to hold the same.

(f)      Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to vote, in person or by general or limited proxy, at any election of any corporation in which the Trust Fund is invested, and similarly to exercise, personally or by a general or limited power of attorney, any right appurtenant to any Authorized Investment held in the Trust Fund.

(g)      Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to purchase any Authorized Investment at a premium or a discount;

(h)      Upon instruction from the Committee, to employ for the benefit of the Trust Fund suitable agents, actuaries, accountants, investment counselors, legal counsel and consultants, and to pay their reasonable expenses and compensation;

(i)      Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to purchase, to sell, to exercise, to allow to expire without exercise, and to honor the exercise of, options to purchase or sell stock, commodities or other assets subject to such options.

(j)      With the consent of the Committee, to borrow, raise or lend moneys, for the purposes of the Trust in such amounts and upon such terms and conditions as the Trustee, in its absolute discretion, may deem advisable, and for any such moneys so borrowed, to issue its promissory note as Trustee and to secure the repayment thereof by pledging or mortgaging all or any part of the Trust Fund, provided that no person lending money to the Trustee shall be bound to see to the application of the money lent or to inquire into the validity, expediency or propriety of any such borrowing;

(k)    To cause any Authorized Investment in the Trust Fund to be registered in, or transferred into, its name as Trustee or the name of its nominee or nominees, or to retain such investments unregistered in a form permitting transfer by delivery, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust Fund, and the Trustee shall be fully responsible for any misappropriation in respect of any investment held by its nominee or held in unregistered form and shall cause the indicia of ownership to be maintained within the jurisdiction of the district courts of the United States, except as may otherwise be permitted under regulations promulgated by the Secretary of Labor;

(l)    To do all acts which it may deem necessary or proper and to exercise any and all powers of the Trustee under this Trust Agreement upon such terms and conditions as it may deem to be in the best interests of the Trust;

(m)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to apply for, purchase, hold, transfer, pay premiums on, surrender, and exercise all incidents of ownership of any insurance contract, any guaranteed income, guaranteed investment, and similar contracts which it is properly directed to purchase;

(n)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to invest in units of any common or collective trust fund, mortgage or other asset pool, or short term investment fund operated by the Trustee exclusively for the purpose of investment of assets of employee benefit plans exempt from income taxation under section 501(a) of the Code, and at any time at which any assets of the Trust Fund are so invested, the trust agreement or other instrument governing such common or collective trust fund, mortgage or asset pool, or other investment fund shall be deemed incorporated herein and made a part hereof, as though set forth at length in this Trust Agreement;

(o)    Upon instruction from the Committee to begin, maintain or defend any litigation necessary in connection with the administration of the Plan or the Trust, except that the Trustee shall not be obligated or required to do so unless it has been indemnified to its satisfaction against all expenses and liabilities sustained or anticipated by it by reason thereof;

(p)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to pay any income or other tax or estimated tax, charge or assessment attributable to any property or benefit out of such property or benefit in its sole discretion, or any tax on unrelated business income of the Trust, if any, out of the Trust Fund;

(q)    Upon instruction from the Committee or from any Investment Manager appointed pursuant to Section 10.5 or any other agent designated in writing by the Committee, to retain any funds or property subject to any dispute without liability for

payment of interest, or decline to make payment or delivery thereof until final and unappealed adjudication is made by a court of competent jurisdiction;

(r)     Upon instruction from the Committee, to grant consents, take actions and otherwise implement the rights of the Trustee under the Plan; and

(s)     The Trustee shall have no responsibility for determining that any asset purchased for, or held in, the Trust Fund is, or continues to be, an Authorized Investment.

Section 6.2     <u>Administrative Powers of the Trustee</u>.  Notwithstanding the appointment of an Investment Manager, the Trustee shall have the following powers and authority, to be exercised in its sole discretion, with respect to the Trust Fund:

(a)     To employ suitable agents, custodians and counsel and to pay their reasonable expenses and compensation, provided however, that the consent of the Committee shall be required with respect to the payment of any expenses or compensation to agents, custodians or counsel that is not authorized in the Trustee's schedule of fees set forth in Exhibit B.

(b)     To appoint ancillary trustees to hold any portion of the assets of the trust and to pay their reasonable expenses and compensation, provided however, that the consent of the Committee shall be required with respect to the payment of any expenses or compensation to ancillary trustees that is not authorized in the Trustee's schedule of fees set forth in Exhibit B.

(c)     To register any securities held by it hereunder in its own name or in the name of a nominee with or without the addition of words indicating that such securities are held in a fiduciary capacity and to hold any securities in bearer form and to deposit any securities or other property in a depository or clearing corporation.

(d)     To make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the foregoing powers.

(e)     Generally to do all ministerial acts, whether or not expressly authorized, which the Trustee may deem necessary or desirable in carrying out its duties under this Trust Agreement.

Notwithstanding anything in the Plan or this Trust Agreement to the contrary, the Trustee shall not be required by any party to engage in any action, nor make any investment which constitutes a prohibited transaction or is otherwise contrary to the provisions of ERISA or which is otherwise contrary to law or to the terms of the Plan or this Trust Agreement.

The Trustee may consult with legal counsel concerning any question which may arise with reference to this Trust Agreement and its powers and duties hereunder.  The reasonable written opinion of such counsel shall be full and complete protection of the Trustee in respect to any action taken or suffered by the Trustee hereunder in reasonable good faith reliance on said opinion.

Section 6.3    Title to Trust Fund.  All rights, title and interest in and to the Trust Fund shall at all times be vested exclusively in the Trustee.

Section 6.4    Standard of Care.  The Trustee shall discharge its duties in the interests of Participants and for the exclusive purpose of providing benefits to Participants and defraying reasonable expenses of administering the Trust and the Plan and shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, consistent with the provisions of ERISA and the Code.  Subject to the provisions of ERISA, the Trustee will be under no liability or obligation to anyone with respect to any failure of the Committee or any other fiduciary under the Plan or Trust to perform any of its obligations under the Plan or Trust Agreement or for any error or omission of the Committee or any other fiduciary.

Section 6.5    Determination of Rights.  The Trustee shall have no power, authority, or duty hereunder in respect to the determination of the eligibility of any person to coverage under the Plan or the entitlement of any person to any benefit payments under the Plan.

Section 6.6    Continuance of Plan.  Neither the Committee, the Trustee, Mack, or UAW has any contractual or other obligation as to the continuance of the Plan or any responsibility for the adequacy of the Trust Fund to meet and discharge any liabilities under the Plan (except for Mack's contribution obligations pursuant to the Settlement Agreement), and the Trustee's obligation to make any payment shall be limited to amounts held in the Trust Fund at the time of the payment.

Section 6.7    Payment of Expenses.  The Trustee shall apply the assets of the Trust Fund to pay all reasonable costs, charges, and expenses (including, but not limited to, all brokerage fees and transfer tax expenses and other expenses incurred in connection with the sale or purchase of investments, all real and personal property taxes, income taxes and other taxes of any kind at any time levied or assessed under any present or future law upon, or with respect to, the Trust Fund or any property included in the Trust Fund and all legal, actuarial, accounting and financial advisory expenses, as well as costs related to the retention of service providers to the Trust regardless of whether incurred before or after the effective date of this Trust Agreement) reasonably incurred (and where applicable previously approved) by the Trustee or the Committee in connection with establishment, amendment, administration and operation of the Trust or Plan.  The Committee shall by written certificate provided to the Trustee request payment for any expenses related to the administration of the Trust.  Upon receipt of the written certificate, the Trustee may make the payment requested by the Committee.  The expenses of the Trustee shall constitute a lien on the Trust Fund.  In causing the Trust Fund to pay expenses pursuant to this Section 6.7, the Committee shall be acting in its fiduciary capacity with respect to the Plan or Trust.

Section 6.8    Trustee Compensation.  The Trustee will apply the assets of the Trust Fund to pay its own fees in the amounts and on the dates set forth in Exhibit B.  The Trustee's compensation shall constitute a lien on the Trust Fund.

Section 6.9    Consultation.  The Trustee may engage or consult with counsel or other advisors and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 6.10    Reliance on Written Instruments.  Each direction of the Committee or an Investment Manager shall be in writing and shall be deemed to include a certification that the action directed thereby is one which the Committee or an Investment Manager is authorized to direct and that such direction is in compliance with this Trust Agreement and ERISA, and the Trustee may conclusively rely on such certifications without further investigation.  The Trustee shall be entitled to rely upon any written notice, instruction, direction, certificate, or other communication believed by it to be genuine and to be signed by the Committee, an Investment Manager or their authorized agent(s) or representative(s), unless it knows or should know that the direction or instruction constitutes a breach of the Committee's or the Investment Manager's fiduciary responsibility with respect to the Trust.  To the extent permitted by law, the Trustee shall be fully protected by the assets of the Trust in making payments out of the Trust Fund, or in taking or omitting to take any other actions, in accordance with the written instructions of the Committee, an Investment Manager, or their authorized agent(s) or representative(s), and shall have no responsibility to see to the application of any such payments by the Participants or legal representatives, or by any other recipients thereof specified in such instructions, or to ascertain whether such instructions comply with the terms of the Plan, or to determine the rights or benefits of any person in the Trust or under the Plan, and shall not be liable to any person for or in respect of any payment made by it, or action taken or omitted to be taken by it, in good faith without notice or knowledge of a change in the condition or status of any person affecting that person's rights hereunder; provided that if the Trustee knows or reasonably believes that such an instruction constitutes a breach of fiduciary responsibility with respect to the Plan, the Trustee shall inform the Committee of the breach.  The Committee and any Investment Manager(s) shall furnish the Trustee with a list naming their authorized agent(s) or representative(s), and describing the scope of the authority granted and shall notify the Trustee of any changes to the list. Absent such notification, the Trustee may assume no change has occurred with respect to each list.

Section 6.11    Responsibilities.  Except as required by ERISA, the Trustee shall be under no duty (i) to take any action other than as herein specified with respect to the Trust unless the Committee or an Investment Manager shall furnish the Trustee with instructions in proper form as described by Section 6.10 hereof, or (ii) to commence any suit with respect to the Trust unless the Trustee shall have first agreed in writing to do so and shall have been fully indemnified to the satisfaction of the Trustee. To the extent not prohibited by ERISA, the Trustee shall not be responsible or liable in any way for any action or omission of any other party with respect to the performance of their duties and obligations as set forth in the Plan and this Trust Agreement. The Trustee is a party to this Trust Agreement solely for the purpose set forth in this Trust Agreement and to perform the acts set forth herein, and no obligation or duty shall be imposed upon it except as expressly stated herein or as required by ERISA

Section 6.12    Bonding.  The Trustee shall be bonded in the amount required by section 412 of ERISA and may be covered by liability insurance in accordance with section 410(b) of ERISA. To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustee out of the assets of the Trust Fund under Section 6.7.

Section 6.13    Indemnification.  To the extent permitted by law, the Trust shall indemnify and hold harmless the Committee, the UAW, and the current and former employees, officers and agents of each of them harmless from and against any liability that they may incur in connection with the Plan and Trust, unless such liability arises from their gross negligence, intentional misconduct, breach of the Settlement Agreement or compliance with the obligations specifically set forth in the Settlement Agreement.

## ARTICLE VII
## TRUSTEE ACCOUNTS

Section 7.1    Records.  The Trustee shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements, and other transactions with respect to the Trust, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by the Committee or such person or persons as the Committee may designate.

Section 7.2    Annual Audit.  The Committee shall appoint an auditor to conduct an annual audit of the Trust Fund, a statement of the results of which shall be provided to the Trustee and also made available for inspection by interested persons at the principal office of the Trust.

Section 7.3    No Interest by Participants.  In no event shall any Participant have any interest in any specific asset of the Trust Fund.  At no time shall any account or separate fund be considered a savings account or investment or asset of any particular Participant or class of Participants, and no Participant shall have any right to any particular asset which the Committee or Trustee may have allocated to any account or separate fund for accounting purposes.

Section 7.4    Furnishing Written Accounts.  The Trustee shall file with the Committee a written account setting forth a description of all securities and other property purchased and sold, and all receipts, disbursements, and other transactions effected by it during the accounting period to which the Committee and the Trustee have agreed, and showing the securities and other properties held, and their fair market values at such times and as of such dates as may be agreed by the Committee and the Trustee in writing.  Such written account shall be filed with the Committee within thirty (30) days after the close of each calendar quarter.

Section 7.5    Accounting Year, Cash Basis.  The accounting year of the Trust shall be the calendar year.  All accounts of the Trustee shall be kept on a cash basis.

Section 7.6    Judicial Proceedings.  If the Trustee and the Committee cannot agree with respect to any act or transaction reported in any statement, the Trustee shall have the right to have its accounts settled by judicial proceedings in which only the Trustee and the Committee shall be necessary parties.  Subject to the provisions of ERISA, the Trustee shall not be required to file, and no Participant shall have any right to compel, an accounting, judicial or otherwise, by the Trustee.

## ARTICLE VIII
## PROCEDURES AS TO THE TRUSTEE

Section 8.1    Removal.  The Trustee may be removed by the Committee at any time upon thirty (30) days' advance written notice.  Such removal shall be effective on the date specified in such written notice, provided that notice has been given to the Trustee of the appointment of a successor Trustee in the manner set forth in Section 8.3 below.

Section 8.2    Resignation.  The Trustee may resign by filing with the Committee a written resignation that shall take effect sixty (60) days after the date of such filing, unless prior thereto a successor Trustee has been appointed by the Committee.  In no event may the Trustee's resignation take

effect before a successor Trustee has been appointed.  If the Committee fails to appoint a successor Trustee, the resigning Trustee may seek the appointment of a successor Trustee in the manner set forth in Section 8.3 Any expenses reasonably incurred by the Trustee in connection with such action shall constitute valid trust expenses under Section 6.7.

Section 8.3    Successor Trustee.  The Committee may appoint a successor Trustee by delivering to the successor Trustee an instrument in writing, executed by an authorized representative of the Committee, appointing such successor Trustee, and by delivering to the removed or resigning Trustee an acceptance in writing, executed by the successor Trustee so appointed.  Such appointment shall take effect upon the date specified in Section 8.1 or 8.2 above, as applicable.  If no appointment of a successor Trustee is made by the Committee within a reasonable time after such resignation, removal or other event, any court of competent jurisdiction may, upon application by the resigning Trustee, appoint a successor Trustee after such notice to the Committee and the resigning Trustee, as such court may deem suitable and proper.

Section 8.4    Amendment to Trust Document for Successor Trustee.  The Committee may appoint a successor Trustee by securing from the successor Trustee an amendment to this Trust Agreement, executed by both the successor Trustee and an authorized representative of the Committee, which replaces the current Trustee with the successor Trustee, appointing such successor Trustee, and by delivering to the removed or resigning Trustee an executed copy of the amendment.  Such appointment shall take effect upon the date specified in the amendment.

Section 8.5    Effect of Removal or Resignation of Trustee.  Upon the removal or resignation of the Trustee in accordance with Section 8.1 or 8.2 above, the Trustee shall be fully discharged from further duty or responsibility under this Trust Agreement to the extent permitted by law.

Section 8.6    Merger or Consolidation of the Trustee.  Any corporation continuing as the result of any merger or resulting from any consolidation, to which merger or consolidation the Trustee is a party, or any corporation to which substantially all the business and assets of the Trustee may be transferred, will be deemed to be continuing as the Trustee.

## ARTICLE IX
## PROCEDURES FOR COMMITTEE

Section 9.1    Composition of Committee.  The Committee shall comprise seven individual persons, consisting of four (4) Independent Members and three (3) UAW Members.  No Member of the Committee shall be, or shall ever have been, an officer, director, or employee of Mack or A.B. Volvo; however, a retired UAW-represented employee of Mack may be a UAW Member.  No Independent Member shall have any financial or institutional relationship with Mack or UAW if such relationship could reasonably be expected to impair such person's exercise of independent judgment.

Section 9.2    Term of Office.  Each Member shall continue to serve as such until his or her death, incapacity to serve hereunder, resignation, removal, or the expiration of his or her term. Independent Member terms shall be for four (4)-year periods, except that the initial terms of the original Independent Members shall expire on the dates set forth in Exhibit D.  An Independent Member may serve more than one term.

Section 9.3    Resignation.  A Member may resign, and shall be fully discharged from further duty or responsibility under this Trust Agreement to the extent permitted by law, by giving at least thirty (30) days' advance written notice to the Committee (or such shorter notice as the Committee may accept as sufficient) stating a date when such resignation shall take effect.  Such resignation shall take effect on the date specified in the notice or, if a successor Member has been appointed effective as of an earlier date, on such earlier date.

Section 9.4    Removal and Successor Committee Members.

(a)    An Independent Member may be removed at any time by an affirmative vote of five (5) of the other Members of the Committee upon a finding by such other Members that the Independent Member being replaced or removed failed to perform adequately some or all of the duties required of a Member under the terms of the Trust Agreement.  In the event of a vacancy of an Independent Member position, whether by resignation, removal, incapacity, expiration of the Independent Member's term, or death of an Independent Member, a successor Independent Member shall be elected by an affirmative vote of a majority of the Independent Members, and when possible, such successor Independent Member shall be elected prior to the resignation, removal, incapacity, expiration of the Independent Member's term, or death of the Independent Member being replaced.

(b)    The UAW Members shall serve at the discretion of the UAW International President, and may be removed or replaced, and a successor designated, at any time by written notice from the UAW International President to the Committee.

(c)    Each successor Member shall signify his or her acceptance of the appointment in writing.

(d)    If no appointment of a successor Member is made within a reasonable time after his or her resignation, removal or other event, the United States District Court for the Eastern District of Michigan may, upon application by any remaining Member, appoint a successor Member to the Committee as such court may deem suitable and proper.

Section 9.5    Chair.  The Committee shall select a chair from among its Members (the "Chair"). The term of the Chair will continue until he or she ceases to be a Member, resigns as Chair or is replaced as Chair with another Member by the remaining Members.

Section 9.6    Meetings.

(a)    The Committee shall hold meetings as frequently as is necessary to ensure the efficient administration of the Trust and Plan and shall hold a minimum of three (3) meetings during each calendar year.  The Chair, or any four (4) Members, may call a special meeting of the Committee by giving at least five (5) days' advance written notice of the time and place thereof to all other Members.

(b)    The Chair, or another such individual or individuals so designated by the Chair, shall (i) preside over Committee meetings; (ii) prepare the Committee meeting

agenda; (iii) oversee Trust operations between Committee meetings and report to the Committee on such operations; and (iv) perform such other functions as the Committee determines.

(c)     One Member, or another individual so designated, shall maintain minutes of all Committee meetings, but such minutes need not be verbatim.  Copies of such minutes shall be provided to all Members and to such other parties as the Committee may designate.

Section 9.7     Place of Meeting; Telephonic Meetings.  Meetings of the Committee shall be held in the Detroit, Michigan metropolitan area as designated in the notice of meeting.  Meetings of the Committee may be held through any communications equipment if all persons participating can hear each other, and such participation in a meeting shall be considered presence at the meeting for all purposes, including Section 9.8.

Section 9.8     Quorum.  A majority of the Members of the Committee then in office shall constitute a quorum for the purpose of transacting any business.

Section 9.9     Vote of the Members.

(a)     Each Member of the Committee shall have one vote.  Except as otherwise specified in this Trust Agreement, all actions of the Committee shall be by majority vote of the entire Committee, provided that at least one Independent Member and one UAW Member must be a Member in the majority for any Committee action to take effect.

(b)     The vote of any absent Independent Member of the Committee may be cast in accordance with a written proxy delivered to the other Independent Members of the Committee present at the meeting, and the vote of any absent UAW Member of the Committee may be cast in accordance with a written proxy delivered to the other UAW Members of the Committee present at the meeting.

(c)     In the event that a vacancy exists in the number of Independent Members, or that an Independent Member is absent (and has not delivered a proxy), the Independent Members present shall be entitled to cast the vote otherwise exercisable by the Independent Member not present.  In the event that a vacancy exists in the number of UAW Members, or that a UAW Member is absent (and has not delivered a proxy), the UAW Members present shall be entitled to cast the vote otherwise exercisable by the UAW Member not present.

(d)     In the event of an issue concerning administration or operation of the Trust or Plan results in an even split of votes among the Committee Members, any Committee Member may refer the issue to arbitration pursuant to the procedures established from time to time by the Committee.  Further, in the event that an action to remove an Independent Member pursuant to Section 9.4(a) does not take effect notwithstanding all UAW Members voting in favor, or alternatively, all other Independent Members voting in favor, any Committee Member may refer the issue to arbitration pursuant to the procedures established from time to time by the Committee.  The determination of the arbitrator shall be final and binding on all parties to the Trust.  The costs and expenses of

15

such arbitration (including attorneys' fees for separate counsel for Members on each side of the issue) shall be paid from the Trust unless paid by any other source, or unless otherwise ordered by the arbitrator. The arbitrator's decision must be consistent with the terms of the Trust and, if the dispute concerns an amendment to the Trust, the arbitrator may not issue a decision contrary to the terms of Section 11.1 hereof.

(e)     In addition to decisions made at meetings, actions may be taken without a meeting by unanimous written consent of each of the Members of the Committee.

Section 9.10   Fees and Expenses.  To the extent permitted by ERISA, Members of the Committee will be entitled to reasonable compensation for the performance of their duties hereunder. Members of the Committee may be reimbursed by the Trust for reasonable expenses properly and actually incurred in the performance of their duties. The fees and expenses of the Committee shall be deemed to be fees and expenses of the Trust and shall be reimbursed from the Trust Fund consistent with the restrictions set forth in this Section 9.10.

(a)     Independent Members, with the exception of the Chair, shall receive (i) an annual retainer of $18,000, payable in equal quarterly installments, and (ii) a meeting fee of $2,250 for each meeting of the Committee in which such Independent Member participates up to an annual limit of  $18,000 (8 meetings) in the first and second calendar years of service, and $13,500 for each calendar year of service thereafter (6 meetings). The Chair shall receive (i) an annual retainer of $25,000, payable in equal quarterly installments, and (ii) a meeting fee in the amount set forth above for Independent Members.

(b)     UAW Members who are eligible to receive compensation for participation on the Committee shall receive the amounts described in Subsection 9.10(a) above for Independent Members. Any Member who is an employee of the UAW shall not be eligible to receive compensation for service as a Member. The prohibited compensation described in this Subsection 9.10(b) shall not include reimbursements for reasonable expenses properly and actually incurred in the performance of a UAW Member's duties pursuant to this Trust Agreement.

(c)     Other than UAW Members who are prohibited from receiving compensation pursuant to Subsection 9.10(b), nothing herein shall prohibit or limit any Member from receiving fees from the Trust Fund for services rendered at the request of the Committee (e.g., reasonable meeting fees for attendance at retiree meetings to explain the operation of the programs contemplated by the Settlement Agreement and/or this Trust Agreement).

(d)     Subsequent Reduction in Fees. Once the benefit programs described in Article X have been initiated, or in the event that this Trust is merged with another Trust, the fees set forth in Section 9.10(a) may be reduced prospectively if thereafter the amount of activity and work required of the Committee and the Chair to fulfill their respective obligations under this Trust Agreement and the Plan are reduced, or are projected to be reduced, as determined in Sections 9.10(d)(1) and 9.10(d)(2).

(1)     The Members who are not eligible to receive compensation ("Non-Compensated Members") shall determine whether, based on the considerations set forth above in this Section 9.10(d), the fees payable to Members eligible to receive compensation pursuant to Sections 9.10(a) or 9.10(b) ("Compensated Members") should be reduced.  If the Non-Compensated Members make such a determination by a unanimous vote among the Non-Compensated Members, then the Non-Compensated Members shall pass a resolution to amend the Trust, by unanimous vote of the Non-Compensated Members, setting prospectively the fees payable under Sections 9.10(a) or 9.10(b) to Compensated Members at amounts that are lower than the fees originally prescribed in Section 9.10(a) as such Non-Compensated Members deem appropriate in their sole and absolute discretion.

(2)     In the event that the Compensated Members' fees are reduced in the manner prescribed in Section 9.10(d)(1), all the Members, except the Chair, shall determine whether, based on the considerations set forth above in this Section 9.10(d), the fees paid to the Chair pursuant to Section 9.10(a) also should be reduced.  If such Members make such a determination by a unanimous vote among them, then they shall pass a resolution to amend the Trust, by unanimous vote, setting prospectively the fees payable under Section 9.10(a) to the Chair at amounts that are lower than the fees originally prescribed in Section 9.10(a) as such Members deem appropriate in their sole and absolute discretion.

(e)     The fees and limits described in Section 9.10(a) above, as may be modified by Section 9.10(d), shall be increased each calendar year after inception of the Trust Fund by two-thirds of the previous calendar year's percentage increase, if any, to the consumer price index for urban wages (CPI-U).

## ARTICLE X
## POWERS AND DUTIES OF THE COMMITTEE

Section 10.1    General.  As set forth herein, the Committee shall be responsible for the continuation, amendment, and overall operation of the Trust and the adoption, maintenance, and administration of the Plan.  Subject to the provisions of this Trust Agreement and applicable laws, the Committee shall have sole, absolute and discretionary authority to adopt such rules and regulations and take all actions that it deems desirable for the administration of the Trust, and to interpret the terms of the Plan and Trust.  The decisions of the Committee will be final and binding on all Participants and all other parties to the maximum extent allowed by law.

Section 10.2    Benefits.

(a)     Adoption of Plan.  The Committee shall adopt a Plan or Plans to offer health and welfare benefits to eligible Participants.  The terms of the Plan shall be determined by the Committee, and may provide for different benefit structures for different groups of Participants and may provide for different contributions for such groups; provided, however, that such terms shall be consistent with the relevant provisions of this Trust Agreement.  The rights of the Committee described herein in this Section 10.2 shall be exercised in a manner consistent with the Settlement Agreement.

Subject to its fiduciary responsibilities under Section 10.11, the Committee shall be under no obligation to design the Plan to assure that the assets of the Trust Fund are sufficient to provide benefits to all potential Participants of the Plan in subsequent years.

(b)      Benefits.  The Plan shall include benefits and any other features including, without limitation, co-pays and Participant contributions that the Committee from time to time determines appropriate or desirable in its sole discretion.  In designing the Plan and the benefits to be provided thereunder, the Committee may take into account relevant circumstances, including, without limitation, the degree to which Participants may have alternative resources or coverage sources, as well as the resources of the Trust Fund based upon other sources of funding.  Benefits provided under the Plan shall be limited to those health and welfare benefits permitted by section 501(c)(9) of the Code, section 3(1) of ERISA, and section 302 of the LMRA.

(c)      Method of Providing Benefits.  Benefits under the Plan may be fully insured, partially insured or self-insured, as determined by the Committee from time to time in its sole discretion.  The expected cost of benefits under the Plan shall not exceed the amount expected to be available under the Trust.  The Plan may provide for different programs for different groups of Participants as determined by the Committee in its sole discretion.  The Committee, in its sole discretion, shall decide which of the Participants of the Trust will receive benefits under the Plan, in what form and in what amount.  The exercise of this discretion shall be limited to the design of the Plan and may not be used in making decisions regarding benefits for individual Participants (except in connection with claims for benefits under the terms of the Plan).

(d)      Initial Benefits.  Notwithstanding any other provision in this Section 10.2, until modified by the Committee, the  program of benefits provided under the Plan shall be those specified in the Restructured Retiree Plan, including, without limitation, the same eligibility requirements, participation requirements, co-pays and Participant contributions, if any, as set forth in that Plan.  The Committee may exercise during the period that the Plan is providing the initial benefits described in this Section 10.2(d) administrative discretion (as permitted under the Trust Agreement) in delivering such benefits, including, without limitation, changing the listed providers.

(e)      Eligibility for Initial Participation.  Notwithstanding anything stated in the foregoing, in establishing and amending the Plan as provided in this Section 10.2, the Committee shall not alter the eligibility requirements for participation in the plan for Retirees, Spouses and Surviving Spouses as set forth in the Restructured Plan attached to the Settlement Agreement as Exhibit A.  Continued participation in the Plan may be conditioned on the Participant's satisfying any conditions established by the Committee from time to time.

Section 10.3      Funding Policy.  The Committee will establish a funding policy for the Plan and communicate that funding policy to the Trustee.

Section 10.4      Investment Guidelines.  The Committee may establish investment guidelines for managing (including the power to acquire and dispose of) all or any part of the Trust Fund and

communicate that policy to the Trustee.  However, nothing in this section 10.4 shall limit the powers of the Trustee described in Section 6.2.

Section 10.5    Appointment of Investment Managers.  The Committee may appoint one or more Investment Manager(s) to manage all or part of the Trust Fund and enter into an agreement with the Investment Manager(s).  If an Investment Manager is appointed, it shall have the authority to direct the Trustee as specified in Section 6.1 hereof with respect to the portion of the Trust Fund over which it has investment discretion and the Trustee's duties with respect to that portion of the Trust Fund shall be limited to following the instructions of the Investment Manager.

Section 10.6    Government Reports and Returns.  The Committee shall file all reports and returns, including but not limited to, any IRS Form 5500 series and IRS Form 990 series that are required to be made with respect to the Trust and the Plan.

Section 10.7    Compromise or Settle Claims.  The Committee may compromise, settle and release claims or demands in favor of or against the Trust or the Committee on such terms and conditions as the Committee may deem advisable.

Section 10.8    Appointment of Administrator; Delegation of Authority.  The Committee may appoint a third party to perform any functions assigned to it by the Committee.  The Committee may by adoption of a written resolution delegate to any one or more Members the authority to act on behalf of the full Committee to the extent set forth in the resolution. The Committee shall promptly provide the Trustee with written notice of any such delegation.

Section 10.9    Consultation.  The Committee may engage or consult with counsel or other advisors and, in accordance with the provisions of Section 6.7 hereof, may direct the Trustee to pay reasonable compensation therefor from the Trust Fund and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 10.10    Reliance on Written Instruments.  Each Member of the Committee shall be fully protected in acting upon any instrument, certificate or paper believed by him or her to be genuine and to be signed or presented by a duly authorized person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Section 10.11    Standard of Care.  The Committee shall discharge its duties in the interests of Participants and for the exclusive purpose of providing benefits to such Participants and defraying reasonable expenses of administering the Trust and the Plan and shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, consistent with the provisions of ERISA and the Code.

Section 10.12    Bonding.  The Members of the Committee shall be bonded in the amount required by section 412 of ERISA.  In addition, the Committee may purchase fiduciary liability insurance on behalf of the Trust naming the Members, the Trustee, and any other fiduciary, as it may determine, as a fiduciary under the policy.  Coverage of Trust losses attributable to claims against the Trustee shall be limited to the costs of defending the Trustee.

Section 10.13  <u>Discretionary Authority</u>.  Except as the Committee's powers are limited by specific provisions of this Trust Agreement, the Committee shall have the exclusive right, power, and authority, in its sole and absolute discretion, to administer, apply and interpret this Trust Agreement, the Plan and any other Plan documents, to make its own motions, resolutions, administrative rules and regulations, contracts, or instruments and to decide all matters arising in connection with the operation or administration of the Trust or Plan.  Benefits under the Plan will be paid only if the Committee or its delegate decides in its discretion that the applicant is entitled to them.  Without limiting the generality of the foregoing, the Committee shall have the sole and absolute discretionary authority to

(a)    take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan;

(b)    formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms;

(c)    decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan;

(d)    determine the standard of proof and the sufficiency of evidence as to any factual question arising under the Plan;

(e)    resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan or other Plan documents;

(f)    process, and approve or deny benefit claims and rule on any benefit exclusions;

(g)    settle or compromise disputed claims made by or against the Plan on such terms as the Committee determines to be in the best interest of the Participants; and

(h)    to do all acts which it may deem necessary or proper and to exercise any and all powers of the Committee under this Trust Agreement upon such terms and conditions as it may deem to be in the best interests of the Trust or Plan.

Except in regard to matters affecting any rights or responsibilities of the Trustee, all determinations made by the Committee with respect to any matter arising under the Trust Plan, or under any other Plan documents shall be final and binding on all affected parties, including without limitation Participants, and any other persons who have claims against the Trust Fund and the Plan through any of them.  In the event that the terms of the Plan are inconsistent with the terms of this Trust Agreement, the Trust Agreement controls.

Section 10.14  <u>No Individual Liability on Contracts</u>.  The Members of the Committee shall not be liable personally, either individually or jointly, for any debts, obligations, or undertakings contracted by them, or for the breach of any contracts.  Such claims and obligations shall be paid out of the Trust; provided, however, that the Members shall not be exempt from personal liability for willful misconduct, breach of trust, or fraud, and the Trust shall not indemnify the Members for such liabilities.

Section 10.15   Mack and UAW Not Liable for Conduct of Committee.  The Members of the Committee, individually and jointly, are not, in their capacity as Members, officers, agents, employees, or representatives of Mack or UAW.  In their capacity as Members, each Member is a principal acting independently of Mack and UAW, which shall not be liable for any act, omission, contract, obligation, or undertaking of the Committee or its Members, officers, employees, agents, or representatives.

Section 10.16   Reimbursement for Defense of Claims.  To the extent permitted by applicable law and not otherwise covered by liability insurance purchased by the Trust (without regard to any non-recourse rider purchased by the insured), the Committee Members, employees of the Committee and persons acting on the Committee's behalf pursuant to an express written delegation (each separately, the "Indemnified Party") shall be reimbursed by the Trust Fund for reasonable expenses, including without limitation attorneys fees, incurred in defense of any claim that seeks a recovery of any loss to the Plan or Trust Fund or for any damages suffered by any party to, or beneficiary of this Trust Agreement (a) for which the Indemnified Party is adjudged not liable, or (b) which is dismissed or compromised in a final settlement, where the Committee – or, where required by applicable law, an independent fiduciary – determines that the settling Indemnified Party was not primarily responsible (in such cases, all or only a portion of the settling Indemnified Party's reasonable expenses may be reimbursed, as directed by the Committee or an independent fiduciary), provided that, the Committee shall have the right to approve of the retention of any counsel whose fees would be reimbursed by the Trust Fund, but such approval shall not be withheld unreasonably.

Section 10.17   Subrogation and Reimbursement.

(a)     If the Trust Fund pays benefits to or for any Participant for any injury, illness, expense or loss, the Trust Fund will be subrogated to the full extent of such payments to all rights of the Participant, or any assignee of either of them against any person, firm, corporation or other entity in connection with any claim related to the injury, illness, expense or loss.

(b)     If the Trust Fund pays benefits to or for any Participant for any injury, illness, expense or loss caused, or alleged to be caused, by any person, and the Participant (or someone acting on behalf of the Participant) or any assignee of either of them obtains any recovery from any source in connection with the injury, illness, expense or loss, whether by lawsuit, settlement or otherwise, including any recovery from the Participant's insurance, and regardless of how the recovery is characterized or named, the Trust Fund shall be entitled to full reimbursement from the Participant (or person acting on behalf of the Participant) or any assignee of either of them to the full extent of the Trust Fund's payments.

(c)     The Trust Fund's rights of subrogation and reimbursement shall have first priority and shall not be reduced for any reason, including for attorneys fees, even if the Participant (or person acting on behalf of the Participant) or any assignee of either of them is not "made whole" for his or their loss, unless the Committee or the Committee's designee determines, in the exercise of its sole and absolute discretion, to reduce the Trust Fund's recovery in appropriate circumstances, which may include, with respect to attorneys fees, a condition that the attorney representing the Participant, or assignee, has

21

agreed in advance to honor the rights of the Trust Fund with respect to subrogation and reimbursement contained herein.

(d)     Prior to payment by the Trust Fund to or for any Participant (or someone acting on behalf of the Participant) for any injury, illness, expense or loss caused or alleged to have been caused, in circumstances that may support a recovery from any person, the Participant (or other adult acting on behalf of a minor dependent) will be asked to execute a subrogation and reimbursement agreement consistent with the terms of this Trust Agreement.  Failure to request or obtain such an agreement prior to the payment by the Trust Fund shall not in any way diminish the Trust Fund's rights of subrogation and reimbursement herein.

(e)     The Participant shall do nothing to prejudice the Trust Fund's rights under this Trust Agreement and shall promptly inform the Trust Fund of the name and address of any attorney representing the Participant or assignee.  The Participant shall assist the Trust Fund upon request, including instituting legal proceedings against any appropriate persons, firms, corporations or entities.

(f)     In the event that the Trust Fund is not fully reimbursed as set out in this Trust Agreement, the Trust Fund shall have the right, as the Committee or the Committee's designee may determine, in the exercise of its sole and absolute discretion, to reduce any benefits to which the Participant or assignee is or subsequently may become entitled, by the amount not reimbursed to or recovered by the Trust Fund.

Section 10.18  Code of Ethics.  The Committee shall maintain a code of ethics to govern the conduct of Members and staff, if any, when acting on behalf of the Trust or a Plan or otherwise in their official capacity.  The initial Code of Ethics is attached at Exhibit C.  It may be amended by the Committee in light of experience and evolving standards, consistent with principles of good governance and fiduciary principles.

ARTICLE XI
AMENDMENT, TERMINATION AND MERGER

Section 11.1     Amendment.  The Trust Agreement may be amended at any time in writing by the Committee or by Court order, provided that no amendment may alter Mack's contribution obligations, or Sections 2.1, 6.6, 9.1, 9.2, 9.3, 9.4, 9.8, 9.9, 10.15, or 11.1 of this Trust Agreement; and provided further that no amendment shall adversely affect the exempt status of the Trust or Plan under section 501(c)(9) of the Code.  No amendment to the Trust Agreement shall modify the responsibilities of the Trustee hereunder unless the Trustee has first consented to such amendment.

Section 11.2     Termination.

(a)     The Trust and this Trust Agreement may be terminated at any time in writing by the Committee with a copy of such written instrument to be provided to the Trustee.  Upon termination of this Trust Agreement, the assets of the Trust Fund shall be paid out at the direction of the Committee in the following order of priority:  (a) the payment of reasonable and necessary administrative expenses (including taxes); (b) the payment of benefits to Participants entitled to payments for claims arising prior to such

termination; and (c) at the discretion of the Committee, used in accordance with section 501(c)(9) of the Code and ERISA, for the benefit of such group of Participants in such fashion as the Committee determines. Neither Mack nor the UAW nor the Committee shall have any beneficial interest in the Trust Fund.  The Trust Fund shall remain in existence until all assets have been distributed.

     (b)    Upon termination, the Trustee and the Committee shall continue to have all of the powers provided in this Trust Agreement as are necessary or desirable for the orderly liquidation and distribution of the Trust Fund in accordance with the provisions hereof.

Section 11.3   <u>Transfer of Assets and/or Liabilities</u>.  To the extent permitted by applicable law, some or all of the assets and/or liabilities of the Trust Fund may at the discretion of the Committee be transferred directly to another trust for the purpose of providing health and welfare benefits to some or all of the Participants on such terms and conditions as the Committee may determine.

Section 11.4   <u>Merger of Trusts or Transfer of Assets</u>.  In addition to the powers of the Committee pursuant to Sections 11.2 and 11.3 to merge the Trust or to transfer Trust assets to another trust, including, without limitation, a trust benefiting multiple retiree groups, the Committee may merge or accept transfers of assets from other trusts into the Trust, provided that the assets attributable to the Participants are separately accounted for and are used solely on their behalf.  In the event that the Committee exercises any such powers involving mergers or transfers of assets to or from other trusts, the Committee shall separately account for, and prohibit the use of, contributions to the Trust made by Mack and any income or interest thereon for any purposes other than providing benefits and defraying administrative costs with respect to Participants.

ARTICLE XII<br><u>MISCELLANEOUS</u>

Section 12.1   <u>Rights in Trust Fund</u>.  No Participant or other person shall have any right, title or interest in the Trust Fund or any legal or equitable right against the Trustee, the Committee, the UAW, or Mack, except as may be otherwise expressly provided in the Plan or in this Trust Agreement.

Section 12.2   <u>Non-Alienation</u>.  Except to the extent required by applicable law, the rights or interest of any Participant to any benefits or future payments hereunder or under the provisions of the Plan shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant, nor shall any such Participant have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingent or otherwise, under this Trust Agreement.

Section 12.3   <u>Controlling Laws</u>.  The Trust shall be construed and the terms hereof applied according to the laws of the state of Michigan to the extent not superseded by federal law.

Section 12.4   <u>Counterparts</u>.  This Trust Agreement may be executed in any number of counterparts, each of which shall be considered as an original.

23

Section 12.5   <u>Headings</u>.  The headings and subheadings of this Trust Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Trust Agreement.

Section 12.6   <u>Notices</u>.  All notices, requests, demands and other communications under this Trust Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of receipt if served personally or by confirmed facsimile or other similar communication; (ii) on the first business day after sending if sent for guaranteed next day delivery by UPS or other next-day courier service; or (iii) on the fourth business day after mailing if mailed to the party or parties to whom notice is to be given by registered or certified mail, return receipt requested, postage prepaid, and properly addressed as follows:

If to the Trustee:

_____

_____

_____

If to the Committee:

IN WITNESS WHEREOF, and as evidence of the continuation of the Trust created hereunder, the parties hereto have caused this instrument to be executed as of the date above first written.

COMMITTEE of the UAW RETIREES OF MACK TRUCKING HEALTH BENEFIT FUND

**<u>INDEPENDENT MEMBERS</u>**

_____     Dated:_____
**Francine Parker**

_____     Dated:_____
**Gary Petroni**

_____     Dated:_____
**Jack Martin**

_____     Dated:_____
**Suzanne Paranjpe**

**UAW MEMBERS**

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

**TRUSTEE**

_____

By:    _____

       _____
       Print Name

Dated:_____

o:\general\nickelhoff\uaw\mack\settlement\trust\trust agreement..9.8.11.REVISED.doc

# Exhibit A

**Settlement Agreement**

**<u>Exhibit B</u>**

**Trustee Fees**

## Exhibit C

### Code of Ethics

In order for the Trust to continue the protection from the otherwise debilitating financial consequences that would accompany illness that has been afforded many thousands of UAW retirees of the automobile industry over the decades through the collective bargaining agreements between the UAW and Mack Trucks, Inc. – which protection has been essential to maintaining the dignity and financial security of such UAW retirees – the Committee must administer the Trust, and Trust personnel must act, in complete good faith and honesty, and with a single-minded dedication to protecting the interests of the Participants.  To this end, this Code of Ethics shall govern the conduct of all those persons charged with implementation and administration of the Trust.

The following principles shall apply to members of the Committee as well as to any and all employees, professional staff and others employed in any staff capacity by the Trust.  All such persons are referred to herein as "representatives and employees of the Trust."  The Committee shall also inform all vendors, suppliers, outside consultants, health care providers and any other parties performing services for or on behalf of the Trust of this Code of Ethics and inform them that the Committee expects all such persons or entities to respect the provisions of this Code of Ethics. (For purposes of this Code of Ethics, references to family or families means spouses, children, grandparents, grandchildren, uncles, aunts, nieces, nephews by blood or marriage).

1.      The assets of the Trust Fund are held in trust for the benefit of the Participants.  The Participants are entitled to assurance that Trust assets are not dissipated, are invested wisely, and are spent only for proper purposes.

2.      The Participants are also entitled to assurance that representatives and employees of the Trust will be motivated solely by consideration of the best interests of the Participants, and will never allow their actions in administration of the Trust to be motivated in any respect by their own self-interest or any other factor that could result in decisions being taken that could work to the detriment of the Participants.

3.      Service as a representative or employee of the Trust is service *in the interest of the Participants.*  Pursuing any other goal will injure the reputation of the individual involved as well as the Trust itself.  Even more importantly, pursuing any goal other than the best interests of the Participants will undermine the Trust's ability to provide benefits to Participants.

4.      It is vital that all representatives and employees of the Trust conduct their day-to-day activities in accordance with these principles and in a manner consistent with the special responsibility they have to the Participants.  Employees and representatives of the Trust must demonstrate – by their conduct as well as their words – that they are dedicated solely to helping the Participants and are not motivated by any other goal or in any sense seeking to enrich themselves, their

families, or business associates, or gain any advantage for themselves, their families, or business associates from their relationship to the Trust.

5.      The Trust shall conduct its proprietary functions, including all contracts for purchase or sale or for rendering services in accordance with the best practices of well-run institutions, including the securing of competitive bids for major contracts.

6.      The Trust shall not permit any of its funds to be invested in a manner designed to result in profit or advantage for any representative or employee of the Trust, his or her family, or business associates.

7.      There shall be no contracts of purchase or sale or for rendering services which will result in profit or advantage for any representative of the Trust, his or her family or business associates.  Nor shall any representative or employee of the Trust accept profit or special advantage for himself or herself, his or her family or business associates from a business – including, without limitation, a vendor or service provider – with which the Trust has a business relationship of any kind.

8.      The Trust shall not make loans to its representatives or employees, or members of their families, for any purpose, including financing the private business of such persons.

9.      No representative or employee of the Trust shall have any compromising personal ties, direct or indirect, with outside agencies such as insurance carriers, brokers, or consultants – including with any representative, employee or agent of any such agencies, carriers, broker or consultants – doing business with the Trust.

10.     The Trust shall fully comply with all applicable legal and accounting requirements, including with respect to maintaining its books and records in accordance with accepted accounting practices and conducting periodic audits as required by law.  The financial records of the Trust shall be made available to retired participants and others as required by law.

11.     Any person who represents the Trust has a duty to serve the best interests of the Participants and Beneficiaries.  Therefore, every representative and employee of the Trust must avoid any outside transaction which even gives the appearance of a conflict of interest.  The special fiduciary nature of these positions requires the highest loyalty to the duties of the office.

12.     No representative or employee of the Trust shall have any personal financial interest which conflicts with her/his duties on behalf of the Trust.

13.     No representative or employee of the Trust shall have any substantial financial interest (even in the publicly-traded, widely-held stock of a corporation), in any business with which the Trust has any business relationship.

14.     No representative or employee of the Trust shall accept "kickbacks," under-the-table payments, gifts or entertainment of any value or any personal payment of any kind from a business or professional enterprise with which the Trust does business, nor arrange to have any such financial payments or perquisites inure to the benefit of their family or business associates.

15.     All staffing decisions and decisions regarding use of outside vendors shall be made based solely on consideration of the best interests of the Participants and Beneficiaries.  No staff shall be hired, nor any consultants or other vendors used in connection with the conduct of the Trust's affairs, as a result of personal or family ties to existing representatives or employees of the Trust, Mack, or UAW.

16.     The Participants and Beneficiaries are entitled to be reasonably informed as to how the Trust's assets are used and cared for.  Toward this end, the Committee shall – at least annually – provide reasonable notice (by mailed notice to Participants and Beneficiaries or other suitable means) in a form understandable by Participants and Beneficiaries of the status of the Trust, including:

   a.     The funding status of the Trust.

   b.     The amount spent on Benefits from the Trust in the prior year.

   c.     The amount spent on administrative costs (including items such as rent, utilities, consulting fees, outside services, salaries, and the like) from the Trust in the prior year.

   d.     The number of Participants and Beneficiaries drawing benefits from the Trust in the prior year.

   e.     The Committee's current projections regarding solvency of the Trust, and any anticipated Benefit adjustments that may be required over the following five (5) year period.

   f.     The investment returns for the preceding year, as well as such longer periods as the Committee may determine.

**Exhibit D**

**Initial Independent Members and Initial Terms of Office**

| *Name* | *Date of Initial Term Expiration* |
|---|---|
| Francine Parker | July 1, 2012 |
| Gary Petroni | July 1, 2013 |
| Jack Martin | July 1, 2014 |
| Suzanne Paranjpe | July 1, 2015 |