IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MACK TRUCKS, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-3737 |
| INTERNATIONAL UNION, | : | |
| UNITED AUTOMOBILE, AEROSPACE | : | |
| & AGRICULTURAL IMPLEMENT | : | |
| WORKERS OF AMERICA - UAW, ET AL.: | | |

SURRICK, J.                                                    SEPTEMBER  21 , 2011

## MEMORANDUM

Presently before the Court are the parties' Joint Motion for Final Approval of Class

Action Settlement (ECF No. 74), and the *Rachilla* Plaintiffs' Unopposed Motion for Interim

Award of Costs and Attorneys Fees (ECF No. 61).  For the following reasons, the Motions will

be granted.

## I.     BACKGROUND

The factual background of this action is set forth in more detail in the Court's May 12,

2011 Memorandum and Order granting Preliminary Approval of Class Action Settlement and

Notice to the Class.  *Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am.-UAW*, No. 07-3737, 2011 WL 1833108 (E.D. Pa. May 12, 2011).[1]

On September 4, 2009, the Court appointed Class Counsel and certified the following

class:

All persons who, as of June 1, 2009 were:  (a) Mack/UAW retirees who were covered

---

[1] On June 2, 2011, this Order was amended by stipulation of the parties.  (Am. Order, ECF No. 66.)

by a Mack/UAW master agreement and who had retired from Mack with eligibility to participate during retirement in the MACK-UAW insurance program, or (b) the spouses, surviving spouses and dependents of Mack/UAW employees who were covered by a Mack/UAW master agreement and who, as of June 1, 2009 were eligible for post-retirement or surviving spouse health care coverage under the Mack-UAW insurance program as a consequence of a Mack/UAW employee's retirement from Mack or death prior to retirement, is hereby certified.

Order, *Rachilla v. Mack Trucks, Inc.*, No. 09-622 (E.D. Pa. Sept. 4, 2009), ECF No. 18.  On March 18, 2011, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement and Proposed Notice to the Class and attached a proposed Settlement Agreement as Exhibit A (the "Settlement Agreement") and a proposed Notice to the Class as Exhibit B. (Prelim. Approval Mot., ECF No. 56.)  A hearing on this Motion was held on May 9, 2011. (Min. Entry, ECF No. 62.)  Under the terms of the proposed Settlement Agreement, Mack and its corporate parent, A.B. Volvo, agreed to contribute $525 million in cash to a Voluntary Employees Beneficiary Association ("VEBA") trust in five annual installments.  (Settlement Agreement ¶ 4.2.)  On May 12, 2011, we issued the Memorandum and Order granting preliminary approval of the Joint Motion, which the parties subsequently amended by stipulation. *See Mack Trucks*, 2011 WL 1833108; (Am. Order).  The individual Class Members each received notice by United States mail on or before June 1, 2011, with delivery to the home addresses of each eligible Retiree and Surviving Spouse.  (Notice to Class, Prelim. Approval Mot. Ex. B; Huxta Decl., Final Approval Mot. Ex. A.)  To date, of the 9,368 Class Members, nine Class Members have objected to the proposed Settlement Agreement.  (ECF Nos. 67, 68, 70, 73.)[2]  Plaintiffs' counsel has represented to this Court that, to their knowledge, only one Class

---

[2] In addition to the four objections formally filed with this Court in accordance with the instructions contained in the Notice to the Class, five Class Members have objected to the Proposed Settlement, although these objections do not currently appear on this case's docket.

Member has not received notice due to an inability to ascertain his or her home address.  (Hr'g

Tr. 10, Sept. 7, 2011.)  On September 7, 2011, a fairness hearing was held pursuant to Federal

Rule of Civil Procedure 23(e).  At the hearing, we heard the arguments of counsel concerning the

fairness, reasonableness and adequacy of the proposed settlement.  (Min. Entry, ECF No. 77.)

On September 8, 2011, pursuant to the Court's request, counsel submitted a supplemental

schedule of attorneys' fees for UAW's outside counsel, Cleary & Josem LLP, for services

provided from inception of this action to June 3, 2011.  (Josem Decl., ECF No. 78.)  On

September 9, 2011, pursuant to the Court's request, the parties submitted a Supplemental

Memorandum in support of their Joint Motion for Final Approval of the Settlement Agreement

and attached a final form Trust Agreement designating the four initial independent members of

the VEBA Committee and their initial terms and compensation.  (Supp. Mem., ECF No. 79;

Trust Agreement, Supp. Mem. Ex. A.)  The Supplemental Memorandum describes in further

detail the services rendered by the experts in this action and their role in settling this dispute.

(Supp. Mem. 2-3.)

   In conjunction with the proposed Settlement Agreement, the *Rachilla* Plaintiffs have

moved for an interim award of attorneys' fees and costs in the amount of $365,364.05, pursuant

to Federal Rule of Civil Procedure 23(h) and Section 502(g)(1) of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(1).  (Att'ys Fees Mem. 12, ECF No. 61.)

These Plaintiffs have requested fees and costs incurred by class counsel through March 2011,

based on a lodestar method of calculation, and have submitted supporting declarations, attorney

fee and cost schedules and other corroborative evidence in connection therewith.  (*Id.*)  They

have not sought any upward adjustments to or multipliers of the lodestar amount.[3]  The *Rachilla*

Plaintiffs' Motion for Interim Award of Attorneys Fees and Costs is unopposed.  Under Section

4.8(a) of the parties' proposed Settlement Agreement, Mack has agreed to pay Plaintiffs'

attorneys' fees and costs, subject to the Court's approval.  (Settlement Agreement ¶ 4.8(a); Att'ys

Fees Mot.)  In addition to the class counsel fees and costs sought by the *Rachilla* Plaintiffs, the

parties seek approval for payment of outside counsel fees in the amount of $66,325.00 and expert

witness fees in the amount of $652,811.00.  (Proposed Order 4-5, ECF No. 76.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a

certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval."  Final approval of a class-action settlement requires the court to determine whether the

settlement is "fundamentally fair, reasonable, and adequate."  *Ehrheart v. Verizon Wireless*, 609

F.3d 590, 592 (3d Cir. 2010); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir.

2009).  In determining fairness of a proposed settlement, the district court "acts as a fiduciary

who must serve as a guardian of the rights of absent class members."  *In re Gen. Motors Corp.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting *Grunin v.*

*Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)); *see also In re Warfarin Sodium*

*Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (noting that purpose of Rule 23(e) is to protect

---

[3] The "lodestar" method of calculation typically begins by taking the amount of time reasonably expended by counsel for the prevailing party in the litigation and compensating that time at a reasonable hourly rate to arrive at the "lodestar."  The lodestar can be adjusted upward or downward, based on a variety of factors.  *Brytus v. Spang & Co.*, 203 F.3d 238, 242-43 (3d Cir. 2000).  An alternative mode of calculation is the percentage-of-recovery method, which awards a fee based on a percentage of the plaintiffs' recovery.  *Id.* at 243.  Plaintiffs have not requested fees or costs based on this alternative method of calculation.

unnamed class members).  Nevertheless, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin*, 391 F.3d at 535.  A settlement is generally presumed to be fair where it has been approved preliminarily, and negotiations have occurred at arm's length, there has been sufficient discovery, the proponents of settlement are experienced in similar litigation and only a small fraction of the class has objected. *In re Gen. Motors Corp.*, 55 F.3d at 785.

Although final approval of a proposed class-action settlement is left to the district court's sound discretion, the Third Circuit has enumerated nine factors district courts should consider in determining fairness of a settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).[4]  No single factor is dispositive, and the district

---

[4] The district court may consider other factors, including:

> The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved --- or likely to be achieved --- for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

court "cannot substitute the parties' assurances or conclusory statements for its independent

analysis of the settlement terms." *In re Pet Food Prods.*, 629 F.3d at 350-51; *Hall v. Best Buy

Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In a class action, "the court may award reasonable attorney's fees and nontaxable costs

that are authorized by law or by the parties' agreement . . . ." Fed. R. Civ. P. 23(h).  Under

Section 502(g)(1) of ERISA, "the court in its discretion may allow a reasonable attorney's fee

and costs of action to either party."  29 U.S.C. § 1132(g)(1).  Courts consider the following five

factors when determining whether to award fees under ERISA:

> (1) the offending parties' culpability or bad faith; (2) the ability of the offending
> parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of
> attorneys' fees against the offending parties; (4) the benefit conferred on members
> of the pension plan as a whole; and (5) the relative merits of the parties' position.

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220, 239 (3d Cir. 2009)

(quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)).  A party seeking

reasonable attorneys' fees and costs need not demonstrate all five factors, but courts must

consider these factors in exercising their discretion.  *Id.*  A reasonable hourly rate for attorneys'

fees is determined based on "the prevailing market rates in the relevant community."  *Blum v.

Stenson*, 465 U.S. 886, 895 (1984).

---

*In re Prudential Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).
While the district court is required to make findings as to each of the nine *Girsh* factors, the
*Prudential* factors represent "additional inquiries" that may be useful in analyzing the fairness of
proposed settlement terms.  *In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 350 (3d Cir.
2010).  We incorporate the *Prudential* factors in our analysis below to the extent they are
relevant.

III.    **DISCUSSION**

A.     **The Proposed Settlement Is Fair, Reasonable and Adequate**

The *Girsh* factors favor approval of the Proposed Settlement.  First, as noted in our

Memorandum and Order granting Preliminary Approval of Class Action Settlement and Notice

to the Class, the proposed Settlement Agreement is the result of years of arms-length negotiations

between very experienced counsel for the Class, counsel for the UAW and counsel for Mack.

The legal issues raised by these parties are complex and largely unsettled.  The stakes are high.

The health benefits at issue have become increasingly costly to Mack while they are very

valuable to the Class Members.[5]   In view of the complex issues and high stakes, litigation could

potentially last for years, and the outcome is uncertain.  If the case were to proceed to trial, the

trial would be complex and expensive.  *Mack Trucks*, 2011 WL 1833108, at *3.  In view of the

high costs and likely duration of continued litigation, this factor weighs in favor of approving the

settlement.  *See In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (affirming district court's

conclusion that the first *Girsh* factor favored settlement because the case involved "complex

legal and factual issues"); *Hall*, 274 F.R.D. at 169 (finding the first *Girsh* factor to weigh in favor

of settlement in view of the two-year litigation and likelihood that additional merits discovery

---

[5] As discussed in the parties' Memorandum in support of their Joint Motion for Final
Approval, the Class Members face high stakes in terms of their and their families' ability to
receive continued future health care benefits.  Although the Class Members have already had
their benefits reduced to a certain extent under the Restructured Plan, if litigation were to proceed
and Mack were to prevail, Mack could conceivably cut these benefits further or even terminate
these benefits.  On the other hand, if judgment were ultimately to favor the Class Members,
Mack would likely be compelled to provide increasingly costly medical benefits to retirees,
which potentially could cause Mack serious financial problems.  Indeed, the financial strain
could be so overbearing that Mack could lose financial viability, thereby eliminating benefits to
the Members entirely.  (*See* Final Approval Mem. 12-13, ECF No. 74-1 (citing as example *UAW
v. GM & UAW v. Ford Motor Co.*, 497 F.3d 615, 632 (6th Cir. 2007)).)

and costly experts would be necessary if the case were to continue).

Second, the overwhelmingly favorable reaction of the Class to the proposed Settlement Agreement weighs in favor of final approval of the proposed settlement.  Of the 9,368 individuals in the Class, nine Class Members total --- less than 0.1 percent of the Class --- objected to the proposed Settlement Agreement.  (ECF Nos. 67, 68, 70, 73 (individual objections to Settlement Agreement); Final Approval Mot. Ex. B (un-docketed individual objections).) Moreover, these objections do not reflect on the fairness of the Settlement Agreement itself, but rather reflect the objectors' beliefs that they are entitled to vested lifetime retiree health care benefits in the first place.  (*Id.*)  The fact that the vast majority of the Class Members have not formally objected to the proposed Settlement Agreement weighs heavily in favor of a finding that it is fair, adequate and reasonable.  *See In re Warfarin*, 391 F.3d at 536 (affirming district court's conclusion that "the insignificant number of objections filed weighed in favor of approving the settlement"); *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) ("The fact that so few potential class members objected to or opted out of the settlement supports a finding of general acceptance of the settlement in the class.").[6]

---

[6] Federal Rule of Civil Procedure 23 and due process require "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice provided here has been more than sufficient.  The notice provides all pertinent information in clear and understandable language, describes the nature of the controversy and the terms of the proposed settlement, and informs Class Members of their right to object, the objection procedure, and the date and location of the fairness hearing.  Notice was distributed by first class mail to the current home addresses of each eligible retiree and surviving spouse Class Member on or before June 1, 2011.  (Notice to Class; Huxta Decl.)  Of the 9,368 Class Members, only one Class Member has not received notice due to an inability to ascertain his or her home address.  We are satisfied that both the content and method of dissemination of the notice comply fully with due process and the requirements of Rule 23.

The third *Girsh* factor, the stage of the proceedings and the amount of discovery completed, also favors final approval of settlement.  This factor "captures the degree of case development that class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813).  Framed another way, this factor seeks "to ensure that a proposed settlement is the product of informed negotiations . . . ."  *In re Prudential Ins. Co.*, 148 F.3d at 319.  The parties have engaged in extensive negotiations in this matter for almost four years.  In so doing, the parties have exchanged financial and operational information and have retained a number of experts to evaluate Mack's financial condition and current and projected viability, as well as its ability to provide post-retirement health care benefits.  The experts have also evaluated the ability of the VEBA trust to provide future health care benefits to the Class Members.  The parties clearly have a full and complete understanding of the factual and legal issues involved in this matter.  *See Pichler v. UNITE*, 775 F. Supp. 2d 754, 760 (E.D. Pa. 2011) (finding that the third *Girsh* factor "unquestionably supports" settlement approval because the circumstances showed the parties were "intimately familiar with the facts and law at issue").

In weighing the fourth, fifth and sixth *Girsh* factors, the district court must assess "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them."  *In re Cendant*, 264 F.3d at 237 (citing *In re Gen. Motors*, 55 F.3d at 814).  In light of the complex issues and high stakes for both parties, the fourth, fifth and sixth *Girsch* factors favor approval of the proposed Settlement Agreement.  *See Pichler*, 775 F. Supp. 2d at 760 (finding fourth, fifth and sixth *Girsh* factors to favor approval of

9

settlement because "the handsome result obtained in the Settlement Agreement would be put at risk had the litigation continued").

The seventh *Girsh* factor weighs in favor of approval as well.  This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement."  *In re Cendant*, 264 F.3d at 240.  The parties do not dispute the fact that the financial position and viability of Mack has, in the past, been questionable.  (Hr'g Tr. 18, Sept. 7, 2011 (representation by Mack attorney that A.B. Volvo's acquisition of Mack represented the third time that Mack had been saved from bankruptcy).)  The parties have mutually represented that "[t]he cost of retiree benefits is a burden to Mack that has been growing disproportionately in relation to its business, and that trend is expected to continue," and the evidence submitted before the Court does not indicate otherwise.  (Final Approval Mem. 12.)  Thus, even if Mack were able to withstand a significantly greater judgment, this fact must be balanced against the risk that the Class Members "[may] not be able to achieve any greater recovery at trial."  *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

In light of the high stakes and risks the parties will face if litigation were to proceed, the eighth and ninth *Girsh* factors, which "test two sides of the same coin," also favor approval of the proposed Settlement Agreement as a whole.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.  As discussed in our earlier Memorandum and Order granting preliminary approval of the settlement, the proposed Settlement Agreement provides the retirees with significant lifetime medical benefits.  The VEBA trust will be administered by an independent committee that is experienced and devoted to furthering the retirees' interests, and its assets will be used exclusively for the purpose of providing retiree medical benefits to Class Members and other

plan participants, and for paying reasonable expenses of administering the plan.  (Hr'g Tr. 7-10,

Sept. 7, 2011.)  Mack and its parent, A.B. Volvo, have agreed to fund the VEBA trust by

contributing a total of $525 million into the trust in five annual installments, with adjustments.

(Settlement Agreement ¶ 4.2.)  In addition, the parties have negotiated a "Restructured Plan," the

administration and funding of which will continue under the proposed Settlement Agreement,

subject to change in the future, based on available VEBA assets and funding projections.  Class

members are already receiving benefits under this Restructured Plan.  (Final Approval Mem. 14-

17.)  Even though there are uncertainties concerning the future benefit funding level of the

VEBA, and there is a likelihood of future benefit reductions, the class members will benefit from

a secure and independent source of funding for future retiree health care benefits that are not

directly linked to the economic and business success of Mack, which the parties have

demonstrated to have been uncertain at best.  (*Id.*)  The parties have represented that it is not

possible to predict with certainty the annual investment return the VEBA will achieve over the

next decades.  (*Id.*)  Nevertheless, the proposed Settlement Agreement provides the certainty of

significant up-front cash funding in an independent trust.  This is reasonable in light of the many

risks and uncertainties that exist if the case were to continue in litigation.[7]

    Finally, the parties here were represented by excellent lawyers who have vast experience

---

[7] Although the parties have described in their memorandum the current Restructured Plan
and loose projections of VEBA funding in the future --- including the projection that if the
VEBA were to invest in a traditional mix of 60 percent equities and 40 percent bonds, VEBA
would earn an annual average return of approximately 7.5 percent, which would be projected
actuarially to be sufficient to fund 85 percent of the current plan of benefits under the
Restructured Plan (Final Approval Mem. 16) --- they have not submitted an estimate range of
actual recoverable damages.  We are satisfied nevertheless that the eighth and ninth factors, as a
whole, weigh in favor of approving settlement, given the certainty of cash funding in an
independent trust that is provided by the Settlement Agreement.

in negotiating and litigating matters of this nature. After four years of litigation and arms length

negotiations, counsel submits this joint motion for approval of the substantial settlement that they

have negotiated. It is apparent that counsel have done an excellent job of forging a reasonable

compromise.

For all of these reasons, we conclude that the parties' Proposed Settlement is fair,

reasonable and adequate.

### B.     The Request for Attorneys' Fees and Costs Is Appropriate

Section 4.8(a) of the Settlement Agreement provides:

> (i) Mack/AB Volvo will pay the reasonable legal fees and expenses of Class Counsel
> with respect to the Consolidated Case, the settlement thereof, obtaining the Approval
> Order and defending any appeals. Attorney fees shall be calculated by multiplying
> the hours reasonably and actually worked by Class Counsel and UAW Outside
> Counsel on the Consolidated Case, including the settlement thereof and any appeals,
> and the drafting of this Agreement and the VEBA Trust Agreement and other
> necessary documentation, by the following rates: Class Counsel: Andrew Nickelhoff
> - $475; Marshall J. Widick - $425; UAW Outside Counsel: William T. Josem - $375;
> Cassie Ehrenberg - $275; and shall not include any upward adjustments such as any
> lodestar multipliers, risk enhancements, success fee, completion bonus, or rate
> premiums. Mack/AB Volvo will support any application to the Court for legal fees
> and expenses provided for in this Section 4.8(a). (ii) Mack/AB Volvo will pay the
> reasonable fees and expenses of Milliman and Potok actually incurred by the UAW,
> and the fees and expenses of Nitin Paranjpe actually incurred by Class Counsel, up
> to the limits set forth in the attached Exhibit D or as subsequently agreed to.

(Settlement Agreement ¶ 4.8(a).) The *Rachilla* Plaintiffs have requested Class Counsel fees in

the total amount of $365,364.05. In addition, pursuant to the terms of the Settlement Agreement,

Mack has been asked to pay outside counsel fees in the amount of $66,325.00 and expert fees in

the amount of $512,076.00 for Leon Potok's services, $118,815.00 for Milliman's actuarial and

consulting services and $21,920.00 for Dr. Nitin Paranjpe's services. Even though Mack has

agreed to pay reasonable attorneys' fees and costs as part of the Settlement Agreement, a request

for attorneys' fees and costs must satisfy the requirements of Section 502(g)(1), 29 U.S.C. §

1132(g)(1), as set forth in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983).

Under the five-factor *Ursic* test, the Court finds that an award of attorneys' fees and costs

is appropriate in these circumstances.  The second *Ursic* factor weighs in favor of awarding

attorneys' fees and costs.  It is reasonable to conclude that Mack can satisfy an award of

attorneys' fees and costs in the amount of $365,364.05 for class counsel, $66,325.00 for outside

counsel and $652,811.00 in total expert costs.  Under the settlement terms, Mack has agreed to

pay $525 million into a VEBA trust, and the requested award of attorneys' fees and costs is

approximately 0.2 percent of that amount.  Payment of the requested fees and costs is unlikely to

cause undue hardship to Mack.  Indeed, Mack does not oppose Plaintiffs' request for an award of

attorneys' fees and costs.  The fourth factor --- "the benefit, if any, that is conferred on others by

the court's judgment" --- favors an award of fees as well.  *McPherson v. Emps.' Pension Plan of*

*Am. Re-Ins. Co.*, 33 F.3d 253, 256 (3d Cir. 1994).  Public policy favors settlement of disputes,

and courts have awarded fees for settlement negotiations.  *See, e.g., Couch v. Cont'l Cas.*, No.

06-80, 2008 WL 131198, at *5 (E.D. Ky. Jan. 11, 2008) (awarding attorneys' fees incurred as a

result of reasonable settlement efforts).  As discussed above, this matter involves complex legal

issues and the outcome of litigation and future economic health of Mack are uncertain.  For these

reasons, the parties have agreed --- and this Court concurs --- that the proposed Settlement

Agreement will benefit both parties.  Awarding the attorneys' fees and costs requested here will

move settlement forward.  Accordingly, this factor weighs in favor of granting the request for

attorneys' fees.

The first, third and fifth *Ursic* factors of culpability, deterrent effect and the relative

merits of the parties' positions, respectively, do not weigh one way or another in light of the fact that the parties have agreed to settle at this stage of the proceedings.  The question of whether Mack's conduct is "blameable; censurable . . . [or] at fault . . . [or] involving the breach of a legal duty or the commission of fault" is unanswered at this juncture.  *McPherson*, 33 F.3d at 257.  To the extent that Mack's conduct may be "blameable," the award of attorneys' fees against the company obviously has a deterrent effect.  However, at this stage of the litigation, the merits of the positions of the parties do not weigh heavily in favor of one party or the other.  We are satisfied that the *Ursic* factors, evaluated together, favor granting the unopposed request for attorneys' fees and costs.

Based on the affidavits, detailed hours and fee schedules and other corroborating evidence provided by the parties, the amount of the requested counsel fees and costs is reasonable.  Class Counsel has recorded 822.40 work hours in this action from inception through March 2011 at attorney rates ranging from $275 per hour to $475 per hour.  (Statement of Fees and Costs, Att'ys Fees Mot. Ex. B.)  Outside counsel has recorded 215 work hours in this action from inception through June 2011 at attorney rates ranging from $275 per hour to $375 per hour.  (Josem Decl.)  The detailed schedules provide with specificity the underlying basis for these hours.  The rates of counsel are reasonable and are not inconsistent with the range of reasonable rates for attorneys in this geographic area with similar skill and experience.  *See, e.g.*, *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. 03-3924 (E.D. Pa. filed July 1, 2003), ECF Nos. 67, 67-3, 83) (reciting similar hourly rates of Philadelphia-area attorneys that were deemed reasonable).  The parties have described the services provided by the three experts and have explained the necessity for their services.  It is clear that Leon Potok's review of Mack's financial

14

data and his opinion on Mack's long-term ability to continue paying retiree medical benefits under the prior Master Agreement were instrumental in arriving at the Settlement Agreement. (Potok Decl., ECF No. 56-11; Supp. Mem. 2-3.)  So too were Dr. Paranjpe's regression analyses to forecast Mack's financial condition in both the short and long term.  (Paranjpe Decl., ECF No. 56-12; Supp. Mem. 3.)  Milliman's actuarial and consulting services to UAW have been described in detail.  (Taranto Decl., ECF No. 56-13.)  The fees for the services of the experts are reasonable and the services provided were necessary.  In addition, Plaintiffs have not requested an upward adjustment of their lodestar calculation.  The attorneys' fees and costs have been adequately documented and the requested fees are reasonable.

IV.     **CONCLUSION**

For the foregoing reasons, the parties' Joint Motion for Final Approval of Class Action Settlement and *Rachilla* Plaintiffs' Unopposed Motion for Interim Award of Attorneys Fees and Costs will be granted.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**